THEODORE KRAUS *v.* IRENE NEWTON
(13444)

PETERS, C. J., HEALEY, SHEA, GLASS and SANTANIELLO, Js.

Argued January 11—decision released May 16, 1989

*Herbert Watstein,* with whom, on the brief, was *Julius Watstein,* for the appellant (plaintiff).

*William J. Tracy, Jr.,* with whom, on the brief, was *F. Patrick O'Sullivan,* for the appellee (defendant).

SANTANIELLO, J. This case is an appeal from the decision of the Appellate Court in *Kraus* v. *Newton,* 14 Conn. App. 561, 542 A.2d 1163, cert. granted, 208 Conn. 815, 546 A.2d 282 (1988). We granted certification to review the judgment of the Appellate Court limited to two issues: (1) whether the trial court's failure to allow a statement by the defendant to be marked as an exhibit for identification was harmless error, and (2) whether there was error in the jury charge regarding the defendant's duty of care.

The underlying facts were set forth in *Kraus* v. *Newton,* supra, and we summarize those pertinent to the issues in this appeal. On the morning of January 4, 1982, the plaintiff, a meter reader employed by Northeast Utilities, went to premises owned by the defendant in Bristol to read the meter. Freezing rain had

begun to fall the previous evening and persisted at the time of the plaintiff's arrival. The stairs and the handrail of the defendant's premises were covered with ice. Upon descending the stairs, the plaintiff slipped and fell, suffering injuries.

The plaintiff brought an action in negligence against the defendant. At trial, the defendant, who was called as a witness by the plaintiff, testified that she did not place sand on the stairway, despite her knowledge of the storm, her proximity to the premises, which she rented to others, and her knowledge that a meter reader was expected on or about the first of each month.

The defendant further testified that four years prior to trial she had signed a statement regarding the plaintiff's fall. The trial court denied both the plaintiff's request for production of the statement and his request to mark the statement for identification.

The jury returned a verdict for the defendant following a charge instructing it that "the rule of law is that an owner may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from its outside entrance walks, platforms, and steps."[1]

---

[1] The pertinent portion of the charge follows: "Under certain circumstances a landowner can be liable to a person on his property for a dangerous accumulation of ice and snow. The rule of law is that an owner may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from its outside entrance walks, platforms, and steps. Then, an owner may, without violating its duty to exercise reasonable care for the safety of business invitees, await the end of a freezing rain, sleet or snow storm or a reasonable time thereafter before removing sleet and snow from its outside walk and steps since removal would be ineffective, generally, during the continuation of a snowstorm in progress.

"Evidence of the conditions existing in the area of the defendant's property is relevant on the issues of notice and the standard of care but it doesn't set the standard of care. The testimony you heard with respect to what the conditions of other properties may have been is one of those circum-

Although the trial court denied a motion by the plaintiff to set aside the jury verdict, its memorandum of decision addressing that motion acknowledged that the court had erred by failing to mark the defendant's statement for identification. The trial court, however, had ordered the defendant to produce the statement at some time following the completion of the trial, marked the statement as a court exhibit and attached the statement to its memorandum of decision. After a review of the statement, the trial court found that any error in failing to allow the statement to be marked for identification was harmless.

The plaintiff argued to the Appellate Court that the failure to mark the defendant's statement during trial prejudiced the plaintiff because it prevented him from offering the statement as a full exhibit. The Appellate Court recognized that a " 'trial court's refusal to permit documents to be marked as exhibits for identification is "manifest error" '; *State* v. *Onofrio,* 179 Conn. 23, 34, 425 A.2d 560 (1979); and that the 'trial court *must* mark as an exhibit for identification *anything* offered by counsel.' (Emphasis in original.) *State* v. *Silva,* 201 Conn. 244, 253, 513, A.2d 1202 (1986)." *Kraus* v. *Newton,* supra, 564. The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis

---

stances that you can take into consideration when you consider the totality of the situation as it existed. The fact that no other landowner in the vicinity, you might find, had not sanded or salted, the condition is evidence for you to consider as to what the proper standard of care is and whether the Defendant was under the obligation to remove, salt or sand under the condition. Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible. The law does not require an inviter to engage in an unending and impractical, if not useless, contest with forces that may be uncontrollable of nature while a storm is in progress. Now, it is for you to make the determination as to what the facts were when the incident happened."

for review. *State* v. *Onofrio,* supra. While the plaintiff in the present case did not have possession or control over the defendant's statement, the record indicates that he requested that the statement be marked for identification and that he intended to offer the statement as a full exhibit.

We agree with the Appellate Court's conclusion that, although the trial court should have allowed the statement to be marked as an exhibit for identification during trial, the subsequent marking of the statement, though unusual, made the appellate record whole and enabled the Appellate Court to decide whether the plaintiff was harmed by the trial court's error. Because the statement contained nothing that could be considered inconsistent with the defendant's testimony at trial and because the information found in the statement was already in evidence, there was nothing in the statement that would have helped the plaintiff's case. The trial court's error in failing to mark for identification the defendant's written statement did not harm the plaintiff and therefore does not constitute reversible error. See *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 40, 440 A.2d 801 (1981); *State* v. *Annunziato,* 169 Conn. 517, 524, 363 A.2d 1011 (1975).

The defendant's remaining claim on appeal is that the trial court erred in charging the jury that a property owner may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from outside entrance walks, platforms and steps. The Appellate Court concluded that the trial court's instructions were proper and consistent with the well established rule of law in other jurisdictions. Given the particular facts of the present case, we agree with the Appellate Court's conclusion that there was no error in the trial court's charge to the jury.

The plaintiff argues that the trial court's charge deviated from Connecticut precedent and amounted to a directed verdict for the defendant. The plaintiff relies on the rule of law enunciated in *Reardon* v. *Shimelman,* 102 Conn. 383, 389, 128 A. 705 (1925), that "[a]n accumulation of ice or snow upon a common approach to a tenement house may impose upon the landlord a liability for injuries due to it, provided he knew, or in the exercise of a reasonable oversight ought to have known, of the existence of the dangerous condition and failed to exercise reasonable care to provide against injury by reason of it." The circumstances giving rise to the rule in *Reardon,* however, differ considerably from the circumstances in the present case.

Unlike the present case, *Reardon* did not deal with a property owner's duty to protect invitees upon his property when a storm is in progress. In *Reardon,* a case in which we found error in the trial court's directed verdict for the defendant, there was no evidence presented of an ongoing storm. Evidence was presented, moreover, that the ice upon the defendant's sidewalk, which caused the plaintiff's fall, had been there for some days and that the defendant had notice of that fact.

Two additional cases relied upon by the plaintiff, *Sheehan* v. *Sette,* 130 Conn. 295, 33 A.2d 327 (1943), and *Lessow* v. *Sherry,* 133 Conn. 350, 51 A.2d 49 (1947), are also factually distinguishable from the present case. In *Sheehan* we upheld the trial court's refusal to set aside the verdict for the plaintiff tenant who had fallen while walking up the ice covered steps that led to the defendant landlords' house. The defendants in *Sheehan* argued that the defect had not existed long enough to give them constructive notice of its existence and a reasonable opportunity thereafter to remedy the defect. We concluded, however, that there was direct evidence from which the jury could reasonably have found that

the steps had been slippery for almost five hours. Furthermore, the rain that later turned to ice and caused the plaintiff to fall had ceased some eleven and one-half hours prior to the plaintiff's fall. Unlike the present case, there was no evidence that there was a storm in progress at the time of the plaintiff's injury. The jury in *Sheehan* reasonably could have found that the defendants had a reasonable opportunity to remedy the defective condition before the accident.

In *Lessow,* the plaintiff had fallen on the ice covered private walk leading to the defendant's home. Thick ice from a storm, which the plaintiff claimed had caused his fall, had covered the walk for three days, and no ashes or sand had been spread upon the ice. Although the trial court in *Lessow* admitted weather reports that indicated that freezing rain had been falling throughout the day of the plaintiff's fall, we upheld the trial court's denial of the defendant's motion to set aside the verdict for the plaintiff. We reasoned that such evidence was not so probative of the existence of new ice at the time of the accident that a conclusion by the jury that the defendant fell upon the old ice was unreasonable.

There was no evidence in the present case of a pre-existing danger from a previous storm. There was, however, direct evidence from which the jury reasonably could have found that the storm was ongoing. On cross-examination, defense counsel asked the plaintiff, "Sir, at the time that this accident occurred when you fell down, isn't it true that there was a freezing rain storm in progress?" The plaintiff replied, "Yes, it was."

We believe that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow

and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical.[2] Our decision, however, does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge.

As we have previously noted, there was no evidence in this case of any preexisting dangerous condition upon the defendant's premises. There was, however, evidence that the storm that produced the dangerous condition was still in progress at the time of the plaintiff's injury. We conclude that under these specific circumstances, there was no error in the trial court's charge to the jury.

The decision of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[2] We further note that such action is not required under the ordinances of the city of Bristol. That city's ordinance regulating ice and snow removal from sidewalks requires a property owner to remove snow or ice or to cover ice with salt and sand within twelve hours after a storm that ends between the hours of 3 a.m. and 9 p.m. and within nine hours after a storm that ends between 9 p.m. and 3 a.m.

Additionally, a survey of the snow and ice removal ordinances in five municipalities bordering Bristol reveals a range from three to twenty-four hours following the end of a storm within which time a property owner must remove accumulations of snow and ice from sidewalks or cover the ice with sand or other suitable substances.

Our decision, therefore, comports not only with the well established rule of law in other jurisdictions, as outlined in the Appellate Court decision, but also with the policy of the city of Bristol and the municipalities that surround it.