## Lois L. Sinert *v.* Olympia and York Development Company et al.
## (13546)

Dupont, C. J., and Landau and Schaller, Js.

Argued April 26—decision released August 22, 1995

*Constance L. Epstein,* with whom, on the brief, was *Jack G. Steigelfest,* for the appellants (defendants).

*John B. Farley,* with whom were *Richard C. Tynan* and, on the brief, *John W. Lemega,* for the appellee (plaintiff).

SCHALLER, J. The defendants appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Lois L. Sinert, in this negligence action. The defendants claim that the trial court improperly (1) instructed the jury as to the law as stated in *Kraus* v. *Newton,* 211 Conn. 191, 558 A.2d 240 (1989), (2) failed to render judgment for the defendants because the only evidence presented was that a storm was in progress at the time of the fall and under Connecticut law there is no duty to remedy the effects of a storm until a reasonable time after the storm ends, (3) denied the defendants' request for an interrogatory to the jury, and (4) failed to instruct the jury on the issue of notice. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On December 28, 1990, a winter storm hit the city of Hartford. Six inches of snow fell from midnight until around 12:15 p.m. At about 1:15 p.m. freezing rain began and continued until the following midnight. The freezing drizzle froze upon contact with the ground.

The plaintiff, a legal secretary at offices located at One Corporate Center, left the building at approximately 3:20 p.m. At that time, the freezing rain was falling. The snow had been cleared from the walkways. The rain was freezing on her glasses as she walked through the courtyard to the sidewalk. The plaintiff watched where she was walking, avoiding areas where she saw ice. She fell on an area where she did not see

any ice until after the fall. The freezing rain continued for a period of time after the plaintiff's fall.

One Corporate Center was owned by the defendants Olympia and York Development Company and the Chase Family Partnership, which had contracted with the defendant National Cleaning Contractors, Inc., for interior janitorial services, as well as for snow and ice removal at One Corporate Center. Building Maintenance Corporation (Building Maintenance) was the local division of National Cleaning Contractors, Inc.

Jose Burgos, the Building Maintenance project manager for One Corporate Center had significant quantities of an ice-melt product called Urea, shovels, pellet spreaders, ice choppers and a snow blower on hand. Burgos arranged for seven to eight employees to be on duty in the early morning hours to attend to the snow removal. Throughout the day, Burgos brought on a total of eighteen additional employees in varying shifts.

When the snow stopped, Burgos' crew finished removing the snow. Burgos then made arrangements for additional help to work through the afternoon and evening hours. During the freezing rain, the employees were to chop any accumulated ice, push it away from the walkway, and apply Urea.

At the conclusion of the plaintiff's presentation of her case, the defendants moved for a directed verdict, premised on *Kraus* v. *Newton,* supra, 211 Conn. 191. The court denied the motion holding that a factual issue remained for the jury's determination as to whether there was a storm in progress at the time of the plaintiff's fall. At the close of the evidence, the defendants requested that the court submit to the jury a special interrogatory inquiring as to whether the jury found that a storm was continuing at the time of the plaintiff's fall. This request was denied.

In their request to charge, the defendants requested that the court direct the jury to return a verdict in favor of the defendants if the jury found the storm was ongoing at the time of the fall. The court rejected this request to charge and, instead, instructed the jury that it could find a duty on the part of the defendants to clear the walk of ice during the continuation of an ongoing storm, if certain circumstances existed.

The jury returned a verdict in the plaintiff's favor, awarding a total of $540,000. The defendants timely filed a motion to set aside the verdict and for judgment notwithstanding the verdict, which the court denied. After a hearing on the setoff for collateral source payments and the correction of a computation error on the part of the jury, the court rendered judgment in the amount of $476,783.46. The defendants filed this appeal.

I

The defendants claim that the trial court improperly instructed the jury as to the law as stated in *Kraus* v. *Newton*, supra, 211 Conn. 191. Specifically, the defendants argue that the trial court gave an improper instruction as a matter of law in its definition of "unusual circumstances" as it is used in *Kraus*. We agree.

The defendants' request to charge included a request that the court direct the jury to return a verdict in favor of the defendants if the jury found that there was an ongoing storm. The court, instead, gave the following instruction: "Now, absent unusual circumstances, a property owner in fulfilling the duty owed upon his property to exercise reasonable diligence in removing dangerous accumulations of ice and snow may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. The law does not require the property owner to engage in an impractical effort with the forces that may

be uncontrollable while a storm is in progress. The question you must ask yourself is whether there was such a storm in progress at the time the plaintiff fell as to make it impractical to require the owner of the building and their hired maintenance crew to have undertaken to do something about the condition of the sidewalk where the plaintiff fell, keeping in mind those circumstances which I referred to earlier, that is the location of the premises, the use of the premises, the day of the week and the time of day.

"If you conclude that the defendants were in the exercise of due care under all of the circumstances, including the weather which you find existed at the time the plaintiff fell, you would return a verdict for the defendants. If you conclude that the defendants did not exercise due care under all of the circumstances, including the weather which you find existed at the time the plaintiff fell, and if you also find that the plaintiff's injuries were caused by the icy condition of the sidewalk, you would go on to consider the defendants' special defense of contributory negligence."

This claim requires us to consider the meaning of the term "unusual circumstances" as it was used in *Kraus* v. *Newton*, supra, 211 Conn. 191. In *Kraus*, our Supreme Court held that *"in the absence of unusual circumstances*, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps." (Emphasis added.) Id., 197–98. While it is true that according to *Kraus*, if unusual circumstances exist, a landowner may have a duty to remove accumulations of ice and snow from walks and steps before the end of a storm, we conclude that the circumstances that existed in this case do not qualify as unusual.

The court instructed the jury to consider certain circumstances in determining whether the defendants owed the plaintiff a duty to clear the accumulation from the sidewalk. "The question you must ask yourself is whether there was such a storm in progress at the time the plaintiff fell as to make it impractical to require the owners of the building and their hired maintenance crew to have undertaken to do something about the condition of the sidewalk where the plaintiff fell, keeping in mind those circumstances which I referred to earlier, *that is the location of the premises, the use of the premises, the day of the week and the time of day.*" (Emphasis added.) This instruction is improper because it takes into consideration the status of the defendants as owners and maintainers of a commercial building in determining the duty owed to a plaintiff. Although the Supreme Court made it clear that *Kraus* v. *Newton,* supra, 211 Conn. 198, applies to "a landlord or *other inviter,*" (emphasis added) there is no authority for the proposition that a defendant's status as the owner of commercial property imposes a different, and higher, duty of care than that imposed on owners of private or residential property. A landowner's duty of care with respect to others has always been determined on the status of the entrant, i.e., trespasser, licensee, or invitee. *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992).

The factors enunciated by the trial court are not appropriate considerations for a jury with respect to this issue. The *status of the defendant* has never been relevant in determining the duty owed a person injured on that defendant's premises. The trial court's assessment of unusual circumstances in this case would result in a heightened duty of care for some landowners as opposed to others. The standard of care as explicated in Connecticut cases is based on the status of the *plaintiff,* not the *defendant.* Unusual circumstances, there-

fore, do not include those factors that define the status of the defendant. *Kraus* makes it clear that, absent unusual circumstances, the only factors to be considered are whether a storm was ongoing at the time of the accident and the plaintiff's status as an invitee. *Kraus* v. *Newton*, supra, 211 Conn. 197–98.

We conclude that the court's instruction to the jury was incorrect as a matter of law. The court's instruction did not conform to the standard as written in *Kraus* v. *Newton*, supra, 211 Conn. 191. According to the rule in *Kraus*, absent unusual circumstances, a landowner's duty to remedy the effects of a storm does not arise until the end of a storm and a reasonable time thereafter. The trial court improperly instructed the jury that it could find unusual circumstances in this case based on the defendants' status.

## II

The defendants next claim that the trial court improperly failed to render judgment for the defendants because the only evidence presented was that a storm was in progress at the time of the fall and, under Connecticut law, there is no duty to remedy the effects of a storm until a reasonable time after the storm ends. We do not agree.

Connecticut law requires a landowner to use reasonable care to maintain the premises in a reasonably safe condition. *Warren* v. *Stancliff*, 157 Conn. 216, 218, 251 A.2d 74 (1968). In *Kraus* v. *Newton*, supra, 211 Conn. 197–98, our Supreme Court held "that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps." The court found that the rationale behind the rule was that

"[t]o require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." Id., 198.

In this case, the evidence at trial was uncontroverted that freezing rain was falling at the time of the accident. Every witness who testified to the weather conditions on that day stated that, about one hour after the snow stopped, freezing rain fell continuously until after the incident. There was no testimony or other evidence to the contrary.

Although there was no disputed factual issue for the jury as to whether there was a storm in progress at the time of the plaintiff's fall, a question of fact existed concerning whether the ice on which the plaintiff slipped came from the freezing rain. The evidence at trial established that the snow storm ended around 12:15 p.m., and that the freezing rain began approximately one hour later at 1:15 p.m. The evidence was in dispute whether the plaintiff slipped on ice deposited entirely from the freezing rain, or partially accumulated from the snow storm. It is unclear in what manner the jury resolved this factual issue, if at all. Additionally, it was unclear if the freezing rain was a separate storm or a continuation of the original storm. These are questions of fact for the jury to consider in order to determine if there was a duty under *Kraus* to clear the accumulation of snow. Because there were factual determinations to be resolved by the jury, we conclude that the trial court properly denied the defendants' request for a directed verdict.

Because we reverse the judgment on the defendants' first claim, we must remand for a new trial.[1]

---

[1] It is unnecessary to review the defendants' other claims. With respect to the claim of improper denial of the request to submit an interrogatory to the jury, however, we note that the defendants requested that the fol-

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

lowing be submitted to the jury: "Did you find that there was an ongoing storm at the time of the plaintiff's fall?" The court denied this request and the trial culminated in a general verdict. The requested interrogatory would not have been dispositive in this case due to the questions of fact that remained, and might even have been misleading to the jury because of the complicated factual situation of this case.

The purpose of a jury interrogatory is to elicit a determination of material facts and to furnish the means of testing the correctness of the jury's verdict. *Willametz* v. *Guida-Seibert Dairy Co.,* 157 Conn. 295, 301, 254 A.2d 473 (1968). Jury interrogatories have also been utilized in protecting a defendant from the implications of a general verdict. "[W]here a complaint is divided into counts and a general verdict is returned, it will be presumed, if the charge and all rulings are correct on any count, that damages were assessed as to that count, and the verdict will be sustained. *Ziman* v. *Whitley,* 110 Conn. 108, 112, 147 A. 370 (1930)." *Sheeler* v. *Waterbury,* 138 Conn. 111, 114, 82 A.2d 350 (1951); *Ross* v. *Koenig,* 129 Conn. 403, 405, 28 A.2d 875 (1942). Because it is within the sound discretion of the trial court whether to submit jury interrogatories; *O'Donnell* v. *Groton,* 108 Conn. 622, 623, 144 A.2d 468 (1929); it was not improper for the court to refuse to do so in this case. Because of the complicated factual determinations for the jury to consider before it could reach the *Kraus* analysis, the jury, however, would have been assisted by interrogatories as would have the court and the defendants in this case. See *Sheeler* v. *Waterbury,* supra, 114-15; *Ziman* v. *Whitley,* supra, 112.