# MARY COOKS *v.* O'BRIEN PROPERTIES, INC.
## (AC 16581)

O'Connell, C. J., and Sullivan and Dupont, Js.

Argued January 21—officially released April 7, 1998

*Ralph G. Eddy,* for the appellant (defendant).

*Vincent F. Sabatini*, with whom, on the brief, was *Tara K. Lyons*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant appeals from the judgment, rendered after a jury trial, in favor of the plaintiff for injuries incurred as a result of a fall on the defendant's property. The defendant claims that the trial court improperly (1) refused to deliver a requested jury charge, (2) charged the jury that there was sufficient evidence on which to find that an accumulation of snow or ice from a previous storm could have been a proximate cause of the plaintiff's fall, (3) refused to submit to the jury the special defense of contributory negligence, (4) granted the plaintiff's motion in limine redacting certain portions of the plaintiff's medical record and a videotaped deposition of the plaintiff's physician, (5) permitted the plaintiff to testify that the photographs of the stairs on which the plaintiff fell were taken almost five hours after the accident occurred, (6) permitted certain questions and responses from a transcript of a deposition to be read to the jury, and (7) admitted into evidence as full exhibits two typewritten statements. We affirm the judgment of the trial court.

The jury reasonably could have found the facts that follow. At the time of the incident that is the subject of this appeal, the plaintiff had been a resident of the defendant's property in Hartford for nineteen years. The defendant's property is an eighteen unit building with a rear parking lot. There were two means of egress from the apartment building, each with steps from the building to the ground level—the front entrance, where the accident occurred, and the back entrance, which has a walkway to the rear parking lot. The parking lot was connected to the public street by a driveway at the front entrance of the building.

On January 6, 1994, a winter storm, Storm Frank, arrived in the Hartford area. The storm, which was tracked by several different weather reporting organizations, including the New England Weather Service, continued to deposit snow and ice in the Hartford area until the early morning of January 8, 1994.[1] That storm was preceded by another winter storm, Storm Emma, which had deposited approximately three to four inches of snow and ice in the Hartford area on January 3 and 4, 1994.

On Saturday, January 8, 1994, at 9 a.m., the plaintiff had plans to go to a supermarket with her friend, Brenda Minter. As of 9 a.m., Jeffrey Sheeley, the superintendent of the apartment building, had not yet begun to clear the snow from the walks or the steps of the building. The driveway, however, had been plowed by a company hired by the defendant.

Just before 9 a.m., the plaintiff left her apartment and walked to the front exit of the building. The plaintiff could see that the steps were covered with snow. She testified that she went back into the building at that point and knocked on Sheeley's door, intending to ask him for assistance in getting down the steps. Getting no response, she attempted to descend the steps herself. She was very careful in her descent of the snow-covered steps, holding on to the railing and stepping into footprints in the deep snow on the steps. The plaintiff walked down the first flight of steps safely, but fell

---

[1] The precise time that the storm ended was in dispute in this trial. The plaintiff's expert, Joe Furey of the New England Weather Service, testified that the snow ended sometime between 1 and 2 a.m. on Saturday, January 8, 1994, several hours before the plaintiff's fall, which occurred at approximately 9 a.m. on January 8, 1994. Furey conceded, however, that some form of light precipitation continued to fall until approximately 11 a.m. that morning. The defendant's expert, meteorologist John Bagioni, who interpreted the data recorded by the National Weather Service Station at Brainard Airport, testified that there was precipitation in progress at 9 a.m. on January 8, 1994, which included some light snowfall.

down the second flight, striking her left knee and left hand on the way down.

Another resident, Anonio Schand, heard the fall and came to the plaintiff's assistance. Schand helped the plaintiff up and she continued to the curb, where Minter picked her up soon after and took her to the store. The plaintiff subsequently sought medical treatment for her injuries. After a five day trial, the jury rendered a verdict in favor of the plaintiff in the total amount of $ 64,494.90. The court applied collateral source payments and medical insurance payments, added interest and costs and rendered a final judgment in the amount of $ 76,599.93.

I

The defendant first claims that the trial court improperly refused to charge the jury in accordance with *Kraus* v. *Newton*, 211 Conn. 191, 197–98, 558 A.2d 240 (1989), as stated in the defendant's request to charge.[2] Instead of delivering the requested charge, the court delivered an alternative jury charge with respect to this issue.[3]

[2] The defendant's request to charge stated: "Under certain circumstances, a landowner can be liable to a person for a dangerous accumulation of ice or snow. However, the rule of law is that an owner may await the end of a freezing rain and/or sleet storm and/or snowstorm and a reasonable time thereafter before removing ice or snow from its outside entrance, walks, platforms and steps. Thus, an owner may, without violating its duty to exercise reasonable care, await the end of a storm of freezing rain, sleet and/or snow, or a reasonable time thereafter, before removing sleet and snow from its outside walks and steps, since removal would be ineffective, generally, during the continuation of a snowstorm in progress.

"If you find that the plaintiff fell during an ongoing storm of freezing rain, sleet and/or snow, and that the ice or snow caused the fall, then you must find for the defendant."

[3] The trial court charged the jury in part as follows: "Now, it is a rule of law that in the absence of unusual circumstances a landlord is permitted to wait until the end of the storm and is given a reasonable time thereafter to remove ice and snow from an outdoor entrance, walking platform or steps. This rule does not prevent you, the jury, from considering whether a storm has ended or whether a plaintiff's fall and injuries resulted from new ice or old ice. This rule permits you to consider whether there were unusual circumstances present which would place a responsibility on a

"It is the law of this state that a request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980). A trial court's instructions to the jury will be considered proper "so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 584, 606 A.2d 693 (1992).

The defendant relied on *Kraus v. Newton*, supra, 211 Conn. 197–98, for its request to charge. *Kraus* held that "in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps." Id., 197–98. The defendant's requested charge included the following language: "If you find that the plaintiff fell during an ongoing storm of freezing rain, sleet and/or snow, and that the ice or snow caused the fall, then you *must* find for the defendant." (Emphasis added.)

The defendant's requested charge does not state correctly the holding of *Kraus*. Under the rule of *Kraus*, a landlord may await a reasonable time after the end of a storm to clear snow and ice only "in the absence of unusual circumstances." Id., 197. The trial court's jury charge, on the other hand, accurately presented the law of *Kraus*, including the unusual circumstances

landlord to remove ice and snow from outside walks and steps even if a storm has not ended."

exception to the general rule. The court properly instructed the jury to determine (1) whether the storm had ended and a reasonable time thereafter had passed, and (2) if a reasonable time had not passed since the end of the storm, whether unusual circumstances existed so as to have required the defendant to remove the snow and ice from the stairway prior to the end of the storm.

With respect to the first determination the jury was instructed to make, the trial court properly placed on the jury the responsibility of determining whether the storm had in fact ended at the time of the plaintiff's fall. Our Supreme Court's decision in *Kraus* "does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended . . . ." Id., 198. The evidence presented by the plaintiff's witnesses, meteorologist Furey and two fact witnesses, was that the snow had stopped falling between 1 and 2 a.m. on January 8, 1994, and that any further precipitation was so light that it would not result in any further accumulation on the ground. The jury reasonably could have determined that the storm had in fact stopped and a reasonable time had passed prior to the plaintiff's fall at 9 a.m.[4]

With respect to the second determination that the jury was instructed to make, consistent with the rule of *Kraus*, the court properly allowed the jury to consider whether any unusual circumstances existed that would impose on the defendant the duty to remove the snow and ice from the steps on which the plaintiff fell prior

---

[4] Contrary to the defendant's assertion in its brief, the trial court's charge to the jury properly made reference to the testimony of both the plaintiff's experts and the defendant's experts with respect to the time that the storm ended. The charge included the following language: "You heard testimony by John Bagioni [the defendant's expert witness] that there was light snow through the morning until noon." The court, therefore, properly allowed the jury to consider all of the evidence presented and to make the factual determination as to whether, at the time of the plaintiff's fall, the storm had ended and a reasonable time thereafter had passed.

to the cessation of the storm. The court proceeded to instruct the jury on several considerations that may constitute unusual circumstances. First, the court instructed the jury that it could consider whether the front steps on which the plaintiff fell were the only practical means of entry and exit from the building on the morning of the accident. Second, the court instructed the jury that it could consider whether all perceptible accumulation of snow had ceased well before 9 a.m., even if some light precipitation continued.

The only Connecticut case of which we are aware in which an appellate court considered the meaning of the term "unusual circumstances" as it was used in *Kraus* is *Sinert* v. *Olympia & York Development Co.*, 38 Conn. App. 844, 847–50, 664 A.2d 791, cert. denied, 235 Conn. 927, 667 A.2d 553 (1995). In *Sinert*, this court held that the trial court gave an improper instruction in its definition of the unusual circumstances exception of *Kraus* because it instructed the jury to consider whether, at the time of the plaintiff's fall on the defendant's property, there was a storm in progress making it impractical for the defendant to clear the sidewalk, " 'keeping in mind those circumstances which [the trial court] referred to earlier, that is *the location of the premises, the use of the premises, the day of the week and the time of day.*' " (Emphasis added.) Id., 848.

While acknowledging "that according to *Kraus*, if unusual circumstances exist, a landowner may have a duty to remove accumulations of ice and snow from walks and steps before the end of a storm," we concluded in *Sinert* that "the circumstances that existed in this case do not qualify as unusual." Id. In so holding, we concluded that the court's instruction was "improper because it takes into consideration the status of the defendants as owners and maintainers of a commercial building in determining the duty owed to a plaintiff. . . . A landowner's duty of care with respect

to others has always been determined on the status of the entrant . . . ." (Citations omitted.) Id., 849. We determined that the trial court's instruction regarding whether unusual circumstances existed "would result in a heightened duty of care for some landowners as opposed to others"; id.; and, accordingly, we concluded that the factors enunciated by the trial court were "not appropriate considerations [in determining whether unusual circumstances existed] for a jury *with respect to this issue.* . . . Unusual circumstances, therefore, do not include those factors that define the status of the defendant." Id., 849–50.

*Sinert*, therefore, stands for the limited proposition that the defendant's status as a commercial property owner does not constitute an unusual circumstance within the decisional parameters of *Kraus*.

In the present case, the trial court's instruction to the jury did not state that the jury could find unusual circumstances based on the status of the defendant as a residential property owner. Instead, the court enumerated factors that related to the conditions that the plaintiff confronted on the day of the accident. Furthermore, the court clearly instructed the jury that absent a finding of unusual circumstances, a property owner may wait a reasonable time after the end of a storm to remove snow and ice from steps and walkways. The trial court, therefore, properly refused to deliver the defendant's requested instruction, as that instruction did not correctly reflect the law of *Kraus*. Instead, the trial court properly instructed the jury on the law of *Kraus*, including the unusual circumstances exception that would permit the jury to consider the evidence presented with respect to the changeover in precipitation and the availability of alternative means of egress from the defendant's property in determining whether such unusual

circumstances existed on the day of the plaintiff's accident so as to impose on the defendant the duty to remove the snow and ice from the steps prior to 9 a.m.[5]

## II

The defendant next claims that the trial court improperly instructed the jury that there was sufficient evidence on which the jury could find that an accumulation of snow or ice from a prior storm could have been the proximate cause of the plaintiff's fall.[6] The rule in *Kraus* "does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of . . . whether a plaintiff's injury has resulted from new ice or old ice [and] when the effects of separate storms begin to converge." *Kraus* v. *Newton*, supra, 211 Conn. 198. While conceding this rule of law, the defendant asserts that there was no proper evidentiary foundation on which the jury reasonably could have concluded that the plaintiff's fall was a result of an accumulation of ice or snow from a prior storm. We disagree.

---

[5] The defendant did not request the court to submit any interrogatories to the jury. Accordingly, there is no record of whether the jury based its verdict on a determination that the storm had ended and a reasonable time thereafter had passed prior to the plaintiff's accident, or on a determination that such unusual circumstances existed as to impose on the defendant a duty to clear the steps on which the plaintiff fell prior to the cessation of the storm.

[6] The relevant portion of the court's jury charge is as follows: "An accumulation of ice or snow of long-standing may be the proximate cause of a fall even though the danger of the condition may have been increased by a recent fall of snow. Once a defective condition of a stairway due to snow and ice has been established, the fact that thereafter and before the injury occurs to the plaintiff as a result of it, the condition varies in some degree by reasons of intervening storms, this will not relieve the defendant of liability, nor will it, of itself, preclude a finding that the defendant had constructive notice of the existence of the defect. If you, the jury, find that there was a preexisting layer of snow or ice on the stairway on which the plaintiff fell and the additional layer of new snow merely caused the condition to become more slippery and dangerous, and the preexisting layer was the proximate cause of the injuries, your verdict would be for the plaintiff."

The plaintiff presented uncontroverted evidence that on January 3 and 4, 1994, Storm Emma deposited approximately three to four inches of snow and ice in the Hartford area. The plaintiff further presented evidence that between the end of Storm Emma and the end of Storm Frank on January 8, 1994, the temperature in Hartford remained below freezing except for January 5, 1994, when the temperature reached thirty-three degrees and some slight melting occurred. The plaintiff's expert witness, meteorologist Furey, testified that left uncleared, some precipitation from Storm Emma would have remained on the ground on January 8, 1994. Specifically, Furey testified that precipitation from Storm Emma would have remained on a concrete surface such as the stairs on which the plaintiff fell. Similarly, Schand testified that the steps had been covered with layers of snow and ice prior to Storm Frank. Finally, the plaintiff testified that she attempted to descend the stairs by walking in footsteps left in the snow by tenants who had exited prior to her. The jury reasonably could have found, therefore, that the underlying ice and snow left on the steps from Storm Emma may have been exposed by the footprints left in the snow of Storm Frank by tenants who had descended the stairs prior to the plaintiff, and that the accumulated snow and ice was a proximate cause of the plaintiff's injuries.

### III

The defendant's remaining five claims all concern challenges to the court's rulings on evidentiary matters. " 'The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion.' " *State* v. *Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse

the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Eisenbach* v. *Downey*, 45 Conn. App. 165, 179, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997).

## A

The defendant's first claim of evidentiary error involves the trial court's refusal to submit to the jury the defendant's amended special defense of September 20, 1996, refusal to charge the jury on the issue of contributory negligence raised by the special defense, and refusal to submit to the jury a verdict form that would have permitted the jury to attribute to the plaintiff a percentage of contributory negligence. The following additional facts are necessary for a proper resolution of this claim.

On September 6, 1994, the defendant filed its answer and special defenses in response to the plaintiff's complaint. By way of special defense, the defendant asserted that the plaintiff's contributory negligence was a substantial factor in producing her accident in that she (1) "failed to watch where she was stepping," (2) "failed to make reasonable use of her own senses and faculties," (3) "failed to step over, away from or around whatever defective or dangerous condition existed," and (4) "failed to use that degree of care that an ordinarily prudent person would have exercised for her own safety while using the premises under the circumstances and conditions then present." By way of reply on September 9, 1994, the plaintiff denied each and every material allegation of the defendant's special defense.

An articulation of the trial court dated January 28, 1997, which is part of the record in this case, outlined a conversation that took place off the record on September 19, 1996, at a charging conference attended by both

parties. According to the articulation, after some discussion, the court asked the defendant whether its special defense of contributory negligence was still in the case and was told, in response, that the defendant would withdraw it.

On the following day, September 20, 1996, defense counsel filed an amended answer and special defense in which he no longer asserted two specifications of his special defense, but repleaded his other two specifications of the plaintiff's negligence. The court refused to accept the defendant's pleading and did not charge on the special defense because the evidence was insufficient to support the special defense.[7] The defendant excepted to the court's decision.

The defendant claims that the trial court improperly refused to charge the jury on the issue of contributory negligence, and that the verdict form should have allowed the jury to assign to the plaintiff a portion of the negligence. We conclude that the trial court properly determined that the defendant had presented insufficient evidence to support a jury charge on the issue of contributory negligence.

"Jury instructions should be confined to matters in issue by virtue of the pleadings and evidence in the case. . . . It is error to submit a specification of negligence to the jury in respect to which no evidence has been offered." (Citation omitted.) *Mack* v. *Perzanowski,* 172 Conn. 310, 313, 374 A.2d 236 (1977); see *Faulkner* v. *Reid,* 176 Conn. 280, 281, 407 A.2d 958 (1978) (improper to submit to jury issue of contributory negligence where no evidentiary foundation established). We have reviewed the transcript in this case and cannot find any evidence from which a jury could conclude reasonably that the plaintiff was contributorily negligent. The trial

---

[7] The court did not refuse to charge because of any claimed withdrawal of the defense.

court in this case properly determined that there was insufficient evidence to support a finding that the plaintiff was contributorily negligent and, accordingly, it properly refused to submit this issue to the jury.

B

The defendant next claims that the trial court improperly granted the plaintiff's motion in limine ordering certain language redacted from her medical record and from the transcript of the videotaped deposition of her doctor. Following her fall, the plaintiff sought treatment from Thomas Stevens, an orthopedic surgeon. During her first visit to Stevens' office, a patient history was taken and was subsequently recorded. The relevant portion of the history states: "She fell several weeks ago during a heavy snowstorm." The same language appears in Stevens' videotaped deposition. Pursuant to the plaintiff's September 17, 1996 motion in limine, the court ordered that the words "during a heavy snowstorm" be redacted from both the medical report and the transcript of the deposition because it was not germane to treatment or diagnosis. The defendant objected, arguing that the statement constituted an admission of a party opponent.

"[S]ince the business of a hospital is treating patients, information that is not relevant to the medical treatment of the patient is inadmissible . . . [and] is subject to redaction by the trial court." (Citations omitted.) *Aspiazu* v. *Orgera*, 205 Conn. 623, 627–28, 535 A.2d 338 (1987). In *Kelly* v. *Sheehan*, 158 Conn. 281, 285, 259 A.2d 605 (1969), our Supreme Court addressed the issue of whether a statement in a hospital record that was otherwise inadmissible as unrelated to diagnosis or treatment was admissible as a party admission. In *Kelly*, the court held that the statement, which in that case concerned the identity of the driver of the car during the subject accident, was not admissible as an admission

because the record did not clearly reflect that the plaintiff had made the statement. Id., 286. Similarly, in the present case, while there is some evidence that the plaintiff made a statement to Stevens similar to the redacted statement, the trial court properly could have determined that there was no evidence that the plaintiff actually made the statement that was transcribed in the medical history. This ruling was one that rested in the discretion of the trial court and, under these facts, we cannot find that the trial court abused its discretion.

C

The defendant next claims that the trial court improperly permitted the plaintiff to testify that the photographs of the stairs on which the plaintiff fell, which were admitted as full exhibits, were taken at approximately 2 p.m. on the day of the accident, nearly five hours after the accident occurred. The defendant does not dispute that the photographs were taken almost five hours after the plaintiff's fall. Nor does the defendant dispute that the photographs were a fair and accurate representation of the condition of the steps at the time of the plaintiff's accident. The defendant claims, however, that the testimony regarding the condition of the steps nearly five hours after the accident was not only irrelevant, but was highly prejudicial in that it allowed the plaintiff to imply that, even if the defendant were permitted a reasonable time after the end of the storm to clear the steps, it would not have done so.

"The balancing of the probative value of evidence against its prejudicial effect has been left to the sound discretion of the trial courts. State v. Tucker, 181 Conn. 406, 416, 435 A.2d 986 (1980). This determination will be disturbed only where there is a clear abuse of discretion or where manifest injustice has been done. Id.; State v. Alford, 37 Conn. App. 180, 186, 655 A.2d 782, cert. denied, 234 Conn. 914, 660 A.2d 357 (1995)." State

v. *Sinchak*, 47 Conn. App. 134, 144–45, 703 A.2d 790 (1997), cert. granted on other grounds, 243 Conn. 964, 707 A.2d 1266 (1998). The trial court did not abuse its discretion in making its determination of admissibility.

D

The defendant next claims that the trial court improperly permitted several sets of questions and responses from the deposition of Schand to be read to the jury. Pursuant to Practice Book § 248 (2), now Practice Book (1998 Rev.) § 13-31 (b), "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." However, "those objections that might be obviated if presented at the time of taking the deposition are waived if not made at that time. . . . Thus, unless reserved by agreement, objections as to form (leading questions, opinion, or unresponsive answers) . . . are generally waived if they could have been cured by prompt presentment." (Citations omitted.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.5.7 (b), p. 58.

The first portion of Schand's deposition testimony to which the defendant objected contained the following questions and answers:

"Q. Now, you have mentioned you remember it snowing the day before. Were the steps cleaned the day before at all?

"A. No. At—I think it was two or three days. I remember they would not deliver the mail because of the steps. Specifically because of the steps.

"Q. Specifically because of the steps?

"A. There was too much snow on it. The mailman would not deliver the mail."

The defendant objected to the admission of this testimony on the grounds that it was unresponsive and that it was based on hearsay. The trial court properly overruled the objections, holding that the defendant's objection as to form should have been raised at the deposition and that the statement did not call for an out-of-court statement and therefore was not hearsay.

The second portion of Schand's deposition testimony to which the defendant objected contained the following questions and answers:

"Q. Are you familiar [with] how any cleanups proceeded during that winter?

"A. Yes, I am.

"Q. Could you describe them?

"A. Okay. Occasionally they would hire private contractors to come in their pickup truck with plows on it. . . . And they'd plow out the back, plowed down the hill, because it was a very steep hill. . . .

"Q. You are talking about a driveway now?

"A. Yeah. The parking lot and the driveway going down into the street which is a very steep hill. Occasionally, a couple of times I'd seen that. I can count on my fingers, matter of fact, two times I seen Jeff Sheeley shovel around the whole building."

The defendant objected to this testimony on the ground that it was irrelevant because it did not concern the steps on which the plaintiff fell. The trial court, however, admitted this evidence under the theory that it was relevant to the on-site superintendent's habit or business custom regarding storm cleanups.

"The practice of doing certain things in a certain way in the regular course of business is admissible to prove such course of conduct was followed on a particular occasion." C. Tait & J. LaPlante, supra, § 8.6.3, p. 253. Furthermore, "[a] person's habit on past occasions is relevant as to his conduct on a similar occasion." Id., § 8.6.2. Schand's testimony clearly indicated that he had knowledge of the snow removal practices at the defendant's building. Accordingly, the trial court properly concluded that the challenged testimony was admissible both as evidence of a business custom and as evidence of habit.

The third portion of Schand's deposition testimony that the defendant claims should have been excluded by the trial court involved the following questions and answers:

"Q. How would you—if you had to evaluate the cleanup of the snow at this building, how would you evaluate it?

"A. I think O'Brien Properties should make their superintendent more—I think he should get out and really pay attention to when it starts. Especially when it stops and go out there and sand, shovel or whatever. If he felt it too big of a job for him to call O'Brien Properties and have them send somebody especially if they feel it's going to stop for say more than five or six hours or whatever. Have somebody come out there and clear it away.

"Q. And you testified that on some occasions you felt they didn't get out there and clean up soon enough, is that right?

"A. I didn't feel, I'd seen that they didn't do that."

The defendant claims that these questions and answers are objectionable because they call for an opinion from a lay witness, are irrelevant as they are not time

specific to the date of the accident and lack foundation. Because the defendant failed to object to the form of these questions and responses at the time of the deposition, it waived them and, accordingly, the trial court properly admitted the testimony.

## E

The defendant's final evidentiary claim involves the trial court's admission into evidence, over the defendant's hearsay objection, of two typewritten statements signed by the plaintiff's witness, Schand, who could not be present at the time of trial. The defendant claims that only the portions of the statements that contained prior inconsistent statements of the witness should have been admitted into evidence, as the remainder of the statements was inadmissible hearsay.

Although the defendant is correct in stating that some of the statements were hearsay, they were nonetheless admissible. "Connecticut has quietly adopted an open-ended approach to exceptions to the hearsay rule that permits a court to admit statements that are technically hearsay and not within traditional exceptions . . . ." Id., § 11.25, p. 414. "Though generally inadmissible, hearsay may be admitted if there is a sufficient probability that the statement is reliable and trustworthy, if the evidence contained in the statement is necessary to resolution of the case, and if the trial court concludes that admitting the statement is in the interests of justice." State v. Stepney, 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The trial court ruled that the plaintiff could introduce the statements in their entirety, holding that the defendant had the opportunity to cross-examine Schand at the deposition on both statements and, accordingly, the protections of the hearsay rule, i.e., to exclude the testimony of witnesses who cannot be cross-examined,

do not apply. We conclude that given the fact that the defendant had the opportunity to cross-examine Schand on the contents of the written statements, the trial court did not abuse its discretion in admitting the statements in their entirety. Furthermore, even if the trial court abused its discretion in admitting the statements, they were cumulative to Schand's deposition testimony.

The judgment is affirmed.

In this opinion the other judges concurred.