[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This appears to be a case of first impression in Connecticut, at least as to the particular facts in this case and the fact that the applicable Supreme and Appellate Court cases all deal with jury instructions as opposed to summary judgment.
This memorandum of decision deals with the motion for summary judgment dated September 26, 1997 filed by the Defendants, First National Supermarkets, Inc., the Beneson Capital Company, Charles CT Page 10097 B. Beneson Family Trust, BWB Holding Company (hereinafter referred to as Defendant "First National") and the motion for summary judgment filed by the Defendant Capitol Sweeping Services, Inc. dated October 7, 1997 (hereinafter referred to as "Capitol") which latter motion has adopted the memoranda of First National supporting the motion for summary judgment.
 FACTS
Based upon the pleadings, the memoranda filed by the parties and the affidavits filed by the parties, the following facts are not in dispute:
1. On February 4, 1995, at approximately 10:45 a.m. the Plaintiff entered the parking lot of Edwards Supermarket on New Britain Avenue, Hartford, Connecticut, which supermarket was owned by First National, to purchase various goods and products sold by Edwards Supermarket.
2. When the Plaintiff was walking down the main aisle of said parking lot toward the store's main entrance, he slipped and fell on hard packed snow and/or ice sustaining injuries. Said area in which the Plaintiff fell was icy and slippery.
3. At said time and place said parking lot had yet to be snow plowed or sanded. Several cars were parked in the parking lot and, therefore, the snow where the plaintiff fell was hard packed due to these cars.
4. First National had hired Capitol to perform snow and plowing and sanding at said supermarket parking lot.
5. Snow began to fall that day at approximately 4:00 a.m. By 10:00 a.m. approximately 4 inches of snow had fallen. Snow continued to fall until 10:00 p. m. at which time total accumulation in the Hartford area was 9.7 inches. (See affidavit of Robert Gilman, certified meteorologist).
6. Prior to February 4, 1995, no precipitation, in any form, had fallen since January 27, 1995, when trace amounts of precipitation fell. No significant precipitation occurred since January 20, 1995. (See affidavit of Robert Gilman).
7. Prior to February 4, 1995, the parking lot of the supermarket was clear of any ice and snow. There had been no CT Page 10098 precipitation for several days prior. (See affidavit of Wendell Labbe, manager of the subject supermarket). Mr. Labbe's affidavit further states that beginning in the early morning of February 4, 1995, the snow began and continued to snow heavily all day long.
8. On February 4, 1995, at approximately 10:45 a.m. and for about one hour before, the snow precipitation was extremely light. (Affidavit of Plaintiff).
9. The only means of entrance and egress for customers of said supermarket was the store's main entrance which the Plaintiff was approaching when he fell. (Plaintiffs Affidavit). . . . the Defendant admitted at oral argument that the market entrance the Plaintiff intended to use was the only practical means of entrance or exit on the day of his fall." (Page 3 of Plaintiffs supplemental brief dated May 24, 1999).
 STANDARD OF REVIEW
A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Burns v.Hartford Hospital, 192 Conn. 451, 455 (1984); Bartha v. WaterburyHouse Wrecking Co., 190 Conn. 8, 11 (1983).
A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. Dougherty v.Graham, 161 Conn. 248, 250 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact, Plouffe v. New York, New Haven and H.R.Company, 160 Conn. 482, 488 (1971). The test has been said as one "in deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. [T]he test is whether a party would be entitled to a directed verdict on the same facts." Cummings and Lockwood v.Gray, 26 Conn. App. 293, 296-97 (1991). "Although the party seeking summary judgment has the burden of showing the non-existence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Burns v. HartfordHospital, supra, Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317 (1984). CT Page 10099
 ISSUES
Issues of negligence are ordinarily not susceptible of summary adjudication. However, "[T]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Pion v.Southern New England Telephone Co., 44 Conn. App. 657, 660
(1997).
The primary case in Connecticut regarding the duty of care as to snow and/or ice removal is Kraus v. Newton, 211 Conn. 191,197-98 (1989). The court stated as follows:
 "We believe that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical."
The issue then is what qualifies as "unusual circumstances." The Appellate Court has addressed this issue in two cases. In Sinertv. Olympia York Development Co., 38 Conn. App. 844, 848-50, cert. denied, 235 Conn. 927 (1995) the court concluded that the defendant's commercial status was an impermissible jury consideration while the plaintiffs status as an invitee and whether the storm was ongoing were permissible considerations. In the case at bar there is no question that the plaintiff was a business invitee, and there is no question, based upon the affidavits, that the storm was ongoing. Sinert, supra, merely stated that the status of the defendant, a commercial or business operation as opposed to a residential property, was immaterial on the issue of unusual circumstances.
The Plaintiff, in his memorandum dated May 7, 1999, sets forth the following facts that he claims makes the situation one of "unusual circumstances":
1. Other properties and land owners had plowed the snow and/or sanded, and local streets had been plowed and/or sanded. CT Page 10100
2. The snow was extremely light for about one hour before the plaintiffs fall.
3. That there was no alternative means of ingress and egress of the store.
4. The snow where he fell was packed down and slippery because of cars traveling over it.
This Court finds that, as long as the snow was continuing, whether the local streets and some of the driveways and sidewalks of a number of other properties had been plowed and/or cleared of snow and ice is irrelevant to the rule set down in Kraus, supra and does not constitute an unusual circumstance. (See paragraph No. 1 above). Further, the fact that the snow was packed down and slippery because of cars traveling over it is certainiy not an unusual circumstance when the snow storm has not stopped. It is perfectly natural or usual for parking lots and other areas to become packed down by cars traveling over them while the snow is still falling. (See paragraph No. 4 above).
The affidavit of meteorologist Robert Gilman states that it snowed continuously on the day of the accident from 4:00 a.m. until 10:00 p. m. Plaintiff states in his affidavit that he observed "extremely light" snow precipitation at the time he fell and for about one hour prior thereto. However, taking the factual situation in the light most favorable to the Plaintiff, extremely light means that it is still continuing, so there is really no dispute as to whether it was continuing. According to Kraus, supra, it is whether the storm stopped, not whether the precipitation was severe or light. As a matter of fact, in this case Mr. Gilman's affidavit indicates that the snow continued beyond the approximately 10:00 a.m. period adding another 5.7 inches to what had already fallen at the time of the accident or close thereto of 4 inches for a total of 9.7 inches. It is clear that the snow did not stop and continued until 10:00 p. m. Therefore, there is no issue of fact as to whether the snow storm had been in continual progress up to the time of the Plaintiffs fall. It had been. (See Par. number 2 above).
Plaintiff has also stated that an unusual circumstance could be whether there was pre-existing ice or snow. However, the affidavits of Mr. Gilman and Mr. Labbe clearly indicate that the parking lot was clear of ice and snow at 4:00 a.m. when the snow CT Page 10101 started to fall on February 4, 1995. These affidavits are uncontroverted.
This leaves the issue of the relevance of the fact that there was only one customer entry and exit to and from the store, and whether that was an unusual circumstance. The Plaintiff cites the case of Cooks v. O'Brien Properties, Inc., 48 Conn. App. 339, 346
(1998). However, on page 2 of its May 24, 1999 supplemental brief, the Plaintiff states that the Appellate Court in Cooks, supra, upheld the instruction in that case and quotes Cooks as "the court properly instructing the jury on the law of Kraus, supra including the unusual circumstances exception that would permit a jury to consider the evidence presented with respect to the . . . the availability of alternative means of egress from the defendant's property in determining whether such unusual circumstances existed on the day of the plaintiffs accident. . ." However, no doubt by oversight, the Plaintiff left out a portion of that quote. The actual quote is as follows: "Instead, the trial court properly instructed the jury on the law of Kraus
including the unusual circumstances exception that would permit the jury to consider the evidence presented with respect to thechange over in precipitation and the availability of alternative means of egress from the defendant's property in determining whether such unusual circumstances existed on the day of the plaintiffs accident. . ." (Emphasis added). The point is that the jury could consider the lack of availability of alternative means of egress in this situation where there had been a change over in precipitation. As in statutory construction, this court must interpret the actual wording of the Cooks decision by its actual language. The word is and" and not "or". This is in line with what distinguishes Cooks, supra from the instant case. In Cooks, there was a factual dispute as to whether the snow had actually stopped. In the instant case, the evidence is uncontroverted that the snow continued although perhaps more lightly at the time of the fall and for an hour preceding, but it still continued. TheCooks decision noted that both circumstances, the termination[1] of the storm and the lack of alternative means of egress might result in unusual circumstances. It is clear, therefore, that whether there is an alternative means of entrance and egress alone cannot be an unusual circumstance under the ruling in Kraus, supra. If the snow storm is continuous, the duty to clear the snow regardless of the number of entrances and exits, has not arisen. If the snow had stopped, not just lightened up, then the issue of whether there was an alternative means of ingress and egress might become relevant as to whether the CT Page 10102 Defendants would have a reasonable time after the snow stopped to get rid of the snow or clear the area. The question then arises as to what is a reasonable time and that would depend, perhaps, on whether there is one or more entrances/exits. Presumably, if there was more than one, the Defendants would need more time to clean the snow and ice therefrom than if there was only one entrance and exit. However, the issue of reasonable time never arises in the case at bar since there is no evidence that the snow had stopped. In fact, the evidence is all to the contrary. It was still in progress. In Cooks one meteorologist had stated that the snow had stopped and the other meteorologist stated that there was still light snow. As the Appellate Court stated in footnote 1 on page 341 of Cooks, supra: "The precise time that the storm ended was in dispute in this trial." In the case at bar there is no dispute as to when the storm ended (not lightened); it is clear that it did not end until 10:00 p. m. InterpretingKraus by its plain language, the only time that the issue of alternative means of ingress and egress arises is when it is clear that the snow has stopped. Further, in using the plural form as to walks and steps, which includes entrance and platforms, in both Kraus and Cooks the courts were instructing that the owner of the property had no duty to remove ice and snow from any or all of the means of egress and ingress prior to the storm stopping. Further, in Kraus, there was no evidence of any additional means of egress, and the court did not address that fact as a possible "unusual circumstance".
For the foregoing reasons, this Court concludes that there is no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law. Accordingly, the above-mentioned Defendants' motions for summary judgment are granted.
Rittenband, J.