## ANTHONY CAFARELLI *v.* FIRST NATIONAL SUPERMARKETS, INC., ET AL.

Superior Court Judicial District of File No. CV970567020S
Hartford

Memorandum filed July 15, 1999

*Watstein & Watstein,* for the plaintiff.

*Benjamin A. Pushner* and *Erik J. Winton,* for the named defendant et al.

*Heffernan & Heffernan,* for the defendant Capitol Sweeping Services, Inc.

### I

### INTRODUCTION

RITTENBAND, J. This appears to be a case of first impression in Connecticut, at least as to the particular

facts in the present case and the fact that the applicable Supreme and Appellate Court cases all deal with jury instructions, as opposed to summary judgment.

This memorandum of decision deals with the motion for summary judgment dated September 26, 1997, filed by the defendants, First National Supermarkets, Inc. (First National), Beneson Capital Company General Partnership, Charles B. Beneson Family Trust, and BWB Holding Company, and the motion for summary judgment dated October 7, 1997, filed by the defendant Capitol Sweeping Services, Inc. (Capitol). Capitol's motion for summary judgment has adopted the memoranda of First National and the other defendants supporting their motion for summary judgment.

## II

## FACTS

Based upon the pleadings, the memoranda filed by the parties and the affidavits filed by the parties, the following facts are not in dispute.

First, on February 4, 1995, at approximately 10:45 a.m., the plaintiff, Anthony Cafarelli, entered the parking lot of the Edwards Supermarket (Edwards or the supermarket), owned by First National, at 76 New Britain Avenue in Hartford, to purchase various goods and products sold by Edwards.

Second, when the plaintiff was walking down the main aisle of the supermarket parking lot toward the store's main entrance, he slipped and fell on hard packed snow and/or ice sustaining injuries. The area in which the plaintiff fell was icy and slippery.

Third, at said time and place, the supermarket parking lot had yet to be snow plowed or sanded. Several cars were parked in the parking lot and, therefore, the snow

where the plaintiff fell was hard packed due to these cars.

Fourth, First National had hired Capitol to perform snow plowing and sanding at the supermarket parking lot.

Fifth, snow began to fall that day at approximately 4 a.m. By 10 a.m., approximately four inches of snow had fallen. Snow continued to fall until 10 p.m. at which time, as stated in the affidavit of Robert Gilman, certified meteorologist, total accumulation in the Hartford area was 9.7 inches.

Sixth, prior to February 4, 1995, no precipitation, in any form, had fallen since January 27, 1995, when trace amounts of precipitation fell. No significant precipitation, according to Gilman, occurred since January 20, 1995.

Seventh, prior to February 4, 1995, the parking lot of the supermarket was clear of any ice and snow. As stated in the affidavit of Wendell Labbe, manager of the supermarket, there had been no precipitation for several days prior. Labbe's affidavit further states that beginning in the early morning of February 4, 1995, the snow began and it continued to snow heavily all day long.

Eighth, on February 4, 1995, at approximately 10:45 a.m. and for about one hour before, the snow precipitation was extremely light.

Ninth, and finally, the only means of entrance and egress for customers of the supermarket was the store's main entrance, which the plaintiff was approaching when he fell. According to the plaintiff's supplemental brief, dated May 24, 1999, "the Defendant admitted at oral argument that the market entrance the Plaintiff intended to use was the only practical means of entrance or exit on the day of his fall."

III

## STANDARD OF REVIEW

"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984); *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11, 459 A.2d 115 (1983).

A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Doughtery* v. *Graham*, 161 Conn. 248, 250, 287 A.2d 382 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact. *Plouffe* v. *New York, N. H. & H. R. Co.*, 160 Conn. 482, 488, 280 A.2d 359 (1971). The test has been said as one "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 297, 600 A.2d 1040 (1991). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted.) *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 317, 477 A.2d 1005 (1984); *Burns* v. *Hartford Hospital*, supra, 192 Conn. 455.

# IV

# ISSUES

Issues of negligence are ordinarily not susceptible of summary adjudication. However, "[t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 660, 691 A.2d 1107 (1997).

The primary case in Connecticut regarding the duty of care as to snow and/or ice removal is *Kraus* v. *Newton*, 211 Conn. 191, 197–98, 558 A.2d 240 (1989). The court there stated that: "We believe that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." Id.

The issue then is what qualifies as "unusual circumstances." Our Appellate Court has addressed this issue in two cases. In *Sinert* v. *Olympia & York Development Co.*, 38 Conn. App. 844, 848–50, 664 A.2d 791, cert. denied, 235 Conn. 927, 667 A.2d 553 (1995), the court concluded that the defendant's commercial status was an impermissible jury consideration while the plaintiff's status as an invitee and whether the storm was ongoing were permissible considerations. In the present case, there is no question that the plaintiff was a business invitee, and there is no question, based upon the affidavits, that the storm was ongoing. *Sinert* merely stated

that the status of the defendant, a commercial or business operation as opposed to a residential property, was immaterial on the issue of unusual circumstances. Id., 849–50.

The plaintiff, in his memorandum dated May 7, 1999, sets forth the following facts that he claims makes the situation one of "unusual circumstances."

First, other properties and landowners had plowed the snow and/or sanded, and local streets had been plowed and/or sanded.

Second, the snow was extremely light for about one hour before the plaintiff's fall.

Third, there was no alternative means of ingress and egress to the store.

Fourth, and finally, the snow where he fell was packed down and slippery because of cars traveling over it.

This court finds that, as long as the snow was continuing, whether the local streets and some of the driveways and sidewalks of a number of other properties had been plowed and/or cleared of snow and ice is irrelevant to the rule set down in *Kraus*, and does not constitute an unusual circumstance. Further, the fact that the snow was packed down and slippery because of cars traveling over it is certainly not an unusual circumstance when the snowstorm has not stopped. It is perfectly natural or usual for parking lots and other areas to become packed down by cars traveling over them while the snow is still falling.

Gilman states in his affidavit that it snowed continuously on the day of the accident from 4 a.m. until 10 p.m. The plaintiff states in his affidavit that he observed "extremely light" snow precipitation at the time he fell and for about one hour prior thereto. Taking the factual

situation in the light most favorable to the plaintiff, however, extremely light means that it is still continuing, so there is really no dispute as to whether it was continuing. According to *Kraus* v. *Newton*, supra, 211 Conn. 198, it is whether the storm has stopped, not whether the precipitation was severe or light. As a matter of fact, in the present case, Gilman's affidavit indicates that the snow continued beyond the approximately 10 a.m. period adding another 5.7 inches to what had already fallen at the time of the accident or close thereto of four inches for a total of 9.7 inches. It is clear that the snow did not stop and continued until 10 p.m. There is, therefore, no issue of fact as to whether the snowstorm had been in continual progress up to the time of the plaintiff's fall. It had been.

The plaintiff has also stated that an unusual circumstance could be whether there was preexisting ice or snow. The affidavits of Gilman and Labbe, however, clearly indicate that the parking lot was clear of ice and snow at 4 a.m. when the snow started to fall on February 4, 1995. These affidavits are uncontroverted.

This leaves the issue of the relevance of the fact that there was only one customer entry and exit to and from the store, and whether that was an unusual circumstance. The plaintiff cites *Cooks* v. *O'Brien Properties, Inc.*, 48 Conn. App. 339, 346, 710 A.2d 788 (1998). On page two of its supplemental brief dated May 24, 1999, however, the plaintiff states that the Appellate Court in *Cooks*, upheld the instruction in that case and quotes *Cooks* as "the trial court properly instructed the jury on the law of *Kraus*, including the unusual circumstances exception that would permit the jury to consider the evidence presented with respect to the . . . availability of alternative means of egress from the defendant's property in determining whether such unusual circumstances existed on the day of the plaintiff's accident . . . ." Id. No doubt by oversight, however, the plaintiff

left out a portion of that quote. The actual quote is as follows: "Instead, the trial court properly instructed the jury on the law of *Kraus*, including the unusual circumstances exception that would permit the jury to consider the evidence presented *with respect to the changeover in precipitation and* the availability of alternative means of egress from the defendant's property in determining whether such unusual circumstances existed on the day of the plaintiff's accident . . . ." (Emphasis added.) Id., 346–47. The point is that the jury could consider the lack of availability of alternative means of egress in this situation where there had been a changeover in precipitation. As in statutory construction, this court must interpret the actual wording of the *Cooks* decision by its actual language. The word is "and" and not "or." Id. This is in line with what distinguishes *Cooks* from the present case. In *Cooks*, there was a factual dispute as to whether the snow had actually stopped. In the present case, the evidence is uncontroverted that the snow continued although perhaps more lightly at the time of the fall and for one hour preceding, but it still continued. *Cooks* noted that both circumstances, the termination[1] of the storm *and*

---

[1] Although the *Cooks* court used "changeover in precipitation," to interpret that as meaning changing to light precipitation would be contrary to and/or expanding upon the ruling in *Kraus*. *Cooks* v. *O'Brien Properties, Inc.*, supra, 48 Conn. App. 346. *Kraus* clearly used the words "the end of a storm" and said nothing about changeover of precipitation. *Kraus* v. *Newton*, supra, 211 Conn. 198. In *Kraus*, the only interpretation of "changeover in precipitation" has to be changeover from precipitation to no precipitation, not to light precipitation.

It is not logical to interpret *Kraus* and *Cooks* any other way. The rationale of *Kraus*, to commence removal or sanding while the storm is continuing would be both "inexpedient and impractical"; means that while the storm continues, no matter how lightly, and here the continuation added 5.7 inches, it makes no difference whether there is more than one entrance/exit to the store while awaiting the *end* of the storm. Id., 198. Like the wording of a statute, the language has to be viewed in light of its achieving a meaningful result. There is no meaning to whether there is more than one exit/entrance until the storm has stopped. To substitute changeover to light snow for awaiting the *end* of the storm is to expand improperly on *Kraus*. To vary

the lack of alternative means of egress might result in unusual circumstances. It is clear, therefore, that whether there is an alternative means of entrance and egress alone cannot be an unusual circumstance under the ruling in *Kraus*. If the snowstorm is continuous, the duty to clear the snow, regardless of the number of entrances and exits, has not arisen. If the snow had stopped, not just lightened up, then the issue of whether there was an alternative means of ingress and egress might become relevant as to whether the defendants would have a reasonable time after the snow stopped to get rid of the snow or clear the area. The question then arises as to what is a reasonable time and that would depend, perhaps, on whether there are one or more entrances/exits. Presumably, if there were more than one, the defendants would need more time to clean the snow and ice therefrom than if there were only one entrance and exit. The issue of reasonable time never arises in the present case, however, since there is no evidence that the snow had stopped. In fact, the evidence is all to the contrary. It was still in progress. In *Cooks*, one meteorologist had stated that the snow had stopped and the other meteorologist stated that there was still light snow. As the Appellate Court stated in *Cooks*: "The precise time that the storm ended was in dispute in this trial." Id., 341 n.1. In the present case, there is no dispute as to when the storm ended (not lightened); it is clear that it did not *end* until 10 p.m. Interpreting *Kraus* by its plain language, the only time that the issue of alternative means of ingress and egress arises is when it is clear that the snow has stopped. Further, in using the plural form as to walks and steps, which includes entrances and platforms, in both *Kraus* and *Cooks*, the court, in each case, was instructing that

from the requirement in *Kraus* to await the end of the storm would be a tortuous and meaningless interpretation of *Kraus*. Here, the storm did not "end" until 10 p.m. Therefore, the number of exits/entrances is not relevant and not an unusual circumstance.

the owner of the property had no duty to remove ice and snow from any or all of the means of egress and ingress prior to the storm stopping. Further, in *Kraus*, there was no evidence of any additional means of egress, and the court did not address that fact as a possible "unusual circumstance."

## V

## CONCLUSION

For the foregoing reasons, this court concludes that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motions for summary judgment are granted.