[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
 FACTS
The relevant facts of this case are undisputed. At all times herein the defendant Farmington Square, LLC, (hereinafter also "Farmington") was the owner of a commercial shopping plaza known as Post Office Square in Farmington, Connecticut. Gymboree Play Program, Inc. (hereinafter also "Gymboree") was a tenant of Farmington at the Post Office Square shopping plaza of a 3,500 square feet portion of a building on said premises (per Lease Agreement attached as Exhibit G to Gymboree's Memorandum of Law in Support of its Motion for Summary Judgment dated June 26, 2002). Burhoe Landscaping and Lawn Service (hereinafter also "Burhoe") was a subcontractor to Farmington acting through its Property Manager, JRJ Enterprises per a contract dated October 10, 1998 for snow removal and for clearing and sanding all icy conditions on all entrances, parking areas, loading dock areas and walks on Farmington's premises at Post Office Square. (See Exhibit A attached to the affidavit of Dean Burhoe dated April 18, 2002).
On January 3, 1999 at approximately 1:30 p.m. William Fryer was carrying his daughter, Trinity Fryer, the plaintiff, when he slipped and fell on an icy sidewalk allegedly causing injuries to the said plaintiff. Mr. Fryer had traveled from North Stonington, Connecticut to the parking area of the shopping plaza in order to bring his daughter, the plaintiff, to a birthday party being held at Gymboree. He got out of his car in the rear parking area while carrying the plaintiff and was stepping onto the sidewalk when he slipped and fell on a coating of ice on said sidewalk. By Amended Complaint dated May 3, 2001, the plaintiff has sued Farmington Square in the First Count, Gymboree in the Second Count and Burhoe in the Third Count alleging negligence against all three defendants. Farmington moved for summary judgment as to the plaintiff's Amended Complaint by motion dated March 26, 2000, Gymboree moved for CT Page 12439 summary judgment as to the Amended Complaint by motion dated June 26, 2002 and Burhoe moved for summary judgment as to the Third Count of the Amended Complaint by motion dated April 1, 2002. Briefs were filed by all parties, and the motions were heard by oral argument before this Court on September 23, 2002. Farmington had also filed an Apportionment Complaint against Burhoe, and at the September 23, 2002 hearing, Burhoe's Motion for Summary Judgment on the Apportionment Complaint was granted by agreement.
 STANDARD OF REVIEW
"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257
(1984); Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11,459 A.2d 1257 (1983).
A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. Dougherty v. Graham,161 Conn. 248, 250, 287 A.2d 382 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact. Plouffe v. New York, N.H. H.R. Co., 160 Conn. 482, 488,280 A.2d 359 (1971). The test has been said as one "[i]n deciding a motion for summary judgment, the trail court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Cummings Lockwood v.Gray, 26 Conn. App. 293, 296-97, 600 A.2d 1040 (1991). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted.) Strada v. Connecticut Newspapers,Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984); Burns v. HartfordHospital, supra, 192 Conn. 455.
This case is governed to a substantial degree by the decision of this Court in Cafarelli v. First National Supermarkets, Inc., 46 Conn. Sup. 179
(July 15, 1999) a copy of which is attached hereto and made a part hereof.
 ISSUES
CT Page 12440 1. Farmington's Motion for Summary Judgment
Weather information from reporting stations at Brainard field in Hartford, Connecticut and Bradley Field in Windsor Locks, Connecticut, compiled by the National Oceanic and Atmospheric Administration ("NOAA") show the weather conditions on January 3, 1999, the date of the plaintiff's fall. Certified copies of same were submitted by the plaintiff and one or more of the defendants. They are the same and may be utilized as evidence to show conditions at or near the involved location if there is sufficient proximity to show or base an inference that the weather conditions at the time of the accident were substantially the same at the two locations. See Bjorkman v. Newington, 133 Conn. 181, 186-187 (1931). There has been no claim to the contrary by any of the parties, i.e. a claim that the weather at the location of the accident was different from the weather reports.[1]
The records reflect that at Bradley Field, there was precipitation in the form of freezing rain, rain and ice pellets from 8:00 a.m. on said date to 8:00 p.m. with an accumulation of 1.34 inches of precipitation, with the heaviest precipitation being between 11:00 a.m. and 3:00 p.m. Brainard field reported precipitation from 9:30 a.m. to 5:00 p.m. with the heaviest precipitation being between 11:00 a.m. and 3:00 p.m., one inch falling during that four hour period with a total accumulation of 1.96 inches of precipitation. of particular note is the weather report attached hereto as Schedule A for January 3, 1999 which is cited by the plaintiff and shows freezing rain at 9:39 a.m. and 9:53 a.m. as well as at 10:08 a.m. and 10:17 a.m. At 10:41 a.m. the precipitation changed to rain and remained that way at least through 4:01 p.m. long after the time of the accident. The temperature during that period of time was at or slightly above freezing. Plaintiffs' argument is that the report at 10:17 a.m. is the last report of freezing rain. However, the records show, and plaintiff's attorney at the hearing on the motions agreed, that although that was the last of the freezing rain, it, nevertheless, continued to rain throughout that entire period following 10:17 a.m. Plaintiff's attorney initially stated in her brief that the storm had stopped at 10:17 a.m. and that there was plenty of time to sand the affected areas between then and when the accident occurred.
As noted in Cafarelli, supra, the primary case in Connecticut regarding the duty of care as to snow and/or ice removal is Kraus v. Newton,211 Conn. 191, 197-98 (1989) which states:
"We believe that in the absence of unusual circumstances, a property owner, in fulfilling the CT Page 12441 duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." (Emphasis added).
Further as noted in Cafarelli, supra:
 "The plaintiff states in his affidavit that he observed "extremely light' snow precipitation at the time he fell and for about one hour prior thereto. Taking the factual situation in the light most favorable to the plaintiff, however, extremely light means that it is still continuing, so there is really no dispute as to whether it was continuing. According to Kraus v. Newton, supra, 211 Conn. 198, it is whether the storm has stopped, not whether the precipitation was severe or light. . . There is, therefore, no issue of fact as to whether the snow storm had been in continual progress up to the time of the plaintiff's fall. It had been."
In the case at bar the storm continued during the entire period from 10:17 a.m. through the time that the plaintiff fell. Kraus, supra, doesn't talk about changeover in precipitation, changeover from snow to light snow or changeover from freezing rain to rain. Kraus, supra, talks about the end of the storm, and the storm did not end until much later than the time at which the plaintiff fell. This is logical for the simple reason that the entity that would otherwise have a duty to sand or remove ice wouldn't know until the storm stopped whether the rain would turn back to freezing rain and accumulate more ice. In any event, based upon the ruling in Kraus, supra, and in Cafarelli, supra, there is no issue of fact as to whether the storm had been in continual progress up to the time of the plaintiff's fall. It had been.[2] Therefore, under Kraus
and Cafarelli, supra, Farmington had no duty to sand or otherwise address the problem of ice on the sidewalk.[3]
Plaintiff also claims that unusual circumstances existed, which were issues of fact, and cites Kraus, supra, that there is an exception to the rule in Kraus to the extent that if there are unusual circumstances, the property owner should not await the end of a storm and a reasonable time CT Page 12442 thereafter before removing the ice. According to Plaintiffs' Memorandum of Law in Opposition to Gymboree's Motion for Summary Judgment, which memorandum is dated August 23, 2002, at page 5, the unusual circumstances were: "The sidewalk the plaintiff used to gain entrance to Gymboree was the closest pathway from the parking lot." Assuming that is true and that there is no issue of fact on this, plaintiff fails to say why this is an unusual circumstance. Plaintiff goes on to cite as an unusual circumstance "The ice on which the plaintiff slipped and fell was not easily discernable and appeared to be black ice." Assuming that is true and there is no issue of fact on this, that condition hardly qualifies as an unusual circumstance. Plaintiff also cites as an usual circumstance the following: "The sidewalk that led from the rear parking lot to the Gymboree, which was used by the plaintiffs, can be described as a partially covered walkway. The roof of this area has an opening in the middle for trees to grow . . . thus, if rain fell through the opening, and the temperature was cold enough, the water would freeze because the covered walkway would prevent the sun from melting it." of course, there would be no sun to melt it during the storm. Perhaps, if it were a summer storm, the sun could be out while it is still raining, but this was on January 3, 1999 with freezing temperatures, and there is no indication that the sun would be out to melt it. It isn't the covered walkway which would prevent the sun from melting it. Rather, it is the fact that there would be no sun at all visible to melt it during the rainstorm. Plaintiff also claims as an unusual circumstance: "Finally, it was certainly foreseeable that patrons had used this walkway during storms since the stores in the Plaza remained open despite inclement weather." That was true in the Cafarelli case and hardly qualifies as an unusual circumstance. These "unusual circumstances" are also contained in Plaintiff's objection dated June 5, 2002 pg. 6 to Farmington's Motion for Summary Judgment.
Further, as this Court noted in Cafarelli, supra, in interpretingKraus along with Cooks v. O'Brien Properties, Inc., 48 Conn. App. 339,346 (1998) the Cook's case indicated that the jury could "consider the evidence presented with respect to the changeover in precipitation and
the availability of alternative means of egress . . . in determining whether such unusual circumstances existed on the day of the plaintiffs' accident. . . . As in statutory construction, this Court must interpret the actual wording of the Cook's decision by its actual language. The word is "and' and not or'. . . . It is clear, therefore, that whether there is an alternative means of entrance and egress alone cannot be an unusual circumstance under the ruling in Kraus. If the snow storm is continuous, the duty to clear the snow, regardless of the number of entrances and exits, has not arisen. . . ." Id. 186-187. Emphasis added. Also see Footnote 1 on said pages. In other words, the unusual CT Page 12443 circumstances do not become relevant until the storm has stopped. However, in any event, this Court does not find the "unusual circumstances" cited by the plaintiffs to be "unusual circumstances". For these reasons alone, Farmington's Motion for Summary Judgment should be granted.
2. Gymboree's Motion for Summary Judgment
There is no question that the plaintiffs were business invitees of Gymboree. However, again, looking at Kraus, supra, the last sentence of the previous quote therefrom is of particular importance. It is: "To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical." (Emphasis added.) This language extends the ruling in Kraus to Gymboree as an inviter. Accordingly, the same rule applies.
There is no question of fact that the area on which the plaintiff fell is and was a common walkway which was available for use by everyone in the shopping plaza going to stores other than Gymboree. Based upon that and the terms of the Lease Agreement previously cited, if there was any duty in this situation to clear the ice or sand it, such duty would be that of the landlord, Farmington, and not that of Gymboree. The Lease Agreement states in pertinent part: "Operation of the Common Areas shall include, without limitation, property management services, snow plowing, sanding. . . ." Finally, in William Fryer's deposition of November 8, 2001, a certified copy being attached as Exhibit B to the Motion for Summary Judgment by Farmington, he stated, on pages 44-45:
 "Q. So how far into that sidewalk area would you have been, do you know?
 A. Probably a few feet. Because I was midway up that first planter, the planter closest to the parking lot.
 Q. Okay. So you would have been about halfway up the length of that planter, is that what you're saying?
A. Yes. Right, where I landed.
Q. And about how far away from the brick wall would you have been? CT Page 12444
A. I'd say five to ten feet.
Q. So about midway on that sidewalk area?
A. Yeah, probably.
 Q. And you said that the entrance to the Gymboree was on the opposite side of that walkway?
 A. Yeah. You can't see it in this photo. It's on the other side of those two planters."
It is clear from these statements that he was not anywhere near the entrance to the Gymboree but in fact was in the common area, the responsibility of which was that of Farmington and not Gymboree.
For these reasons, Gymboree's Motion for Summary Judgment should be granted.
3. Burhoe's Motion for Summary Judgment
 Gazo v. Stamford, 255 Conn. 245, 249 (2001) is clearly applicable to this case. Gazo held that an independent contractor, such as Burhoe, owed a direct duty of care to the plaintiff. "Implicit in the plaintiff's claims that both Chase Bank (the landowner) and Pierni (the subcontractor who was to clear ice and snow, sand, etc.) breached the same duty, and in the same way or ways. This is implicit in the plaintiff's allegations of negligence against Pierni . . . Thus, we view the plaintiff's first claim as, in essence, a claim that Pierni, as Chase Bank's contractor, and having contractually assumed Chase Bank's duty of care to the plaintiff, stands in Chase Bank's shoes with respect to liability to the plaintiff." In the case at bar Burhoe thus stands in Farmington's shoes with respect to liability to the plaintiff. For the reasons stated above, primarily that the storm had not stopped at the time of the plaintiffs' accident, this Court has held that Farmington is not liable to the plaintiff. The logical conclusion, therefore, is that Burhoe is not liable to the plaintiff for the same reasons. The claims of negligence against Burhoe and against Farmington are identical.
There are no claims of the plaintiff being a third party beneficiary of the contract between Farmington and Burhoe. If the plaintiff had pleaded a breach of contract as a third party beneficiary as was done in Gazo in a separate count, it would have been unavailing. Even though it was alleged in a separate count, Gazo stated: "[W]hen the claim is one for personal injury, the decision usually has been that the gravamen of the CT Page 12445 action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading. . . . It is clear that the gravamen of the plaintiff's third party beneficiary contract theory is in reality a tort arising out of a contract. . . . This is manifest from the fact that the plaintiff's allegations of liability and damages sound, not in contract, but in tort. . . . The recovery the plaintiff seeks for his personal injuries is generally understood as tort damages. Although the duty between Pierni and the plaintiff may have arisen because of the contract between Chase Bank and Pierni for snow and ice removal, the plaintiff is not seeking damages for that breach, but rather for Pierni's negligence in the performance of the contract.
In light of these circumstances, it simply would not make sense to permit the plaintiff to recover under a contract theory." Id. 263-264.Gazo goes on to cite several other reasons for the lack of validity of a third party beneficiary claim, but suffice it to say that the Gazo court held that the plaintiff, as a matter of law, could not be considered a third party beneficiary of the contract between the bank and the independent contractor.
For the above reasons, this Court concludes that Burhoe owed no obligation to the plaintiff's, and summary judgment should be granted in its favor.
 CONCLUSION
There are no genuine disputed issues of material fact, and the defendants are entitled to judgment as a matter of law. The Motions for Summary Judgment of Farmington, Gymboree and Burhoe referenced above are hereby granted.
Rittenband, JTR