******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BYRON HERRERA *v.* MEADOW
HILL, INC., ET AL.
(AC 44949)

Alvord, Seeley and Sheldon, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, two companies
that possessed, controlled, managed and maintained certain condomin-
ium premises, for personal injuries he sustained in connection with an
alleged slip and fall as a result of untreated ice on the premises. The
trial court granted the defendants' motion for summary judgment, in
which they argued that there was an ongoing storm at the time of the
plaintiff's alleged fall or that a reasonable time had not elapsed following
the completion of the storm for them to have remediated the snowy or
icy condition. On the plaintiff's appeal to this court, *held*:

1. This court declined to review the plaintiff's unpreserved claim that issues
of material fact remained as to whether the defendants had a reasonable
time between the end of the precipitation and the plaintiff's fall to have
remediated the icy condition, as that claim was never distinctly raised
before the trial court.

2. The trial court properly granted the defendants' motion for summary
judgment because the defendants met their initial burden to demonstrate
that there was no genuine issue of material fact that there was an
ongoing storm at the time of the plaintiff's fall or that a reasonable time
had not elapsed following the conclusion of the storm within which
they should have remediated the snowy or icy condition, and the plaintiff
thereafter failed to sustain his burden to raise a triable issue of fact as
to whether the precipitation from the storm was not the cause of the
accident, specifically, that the defendants created or exacerbated the
allegedly dangerous condition on the steps where he fell by engaging
in remediation efforts during the storm: the defendants submitted admis-
sible evidence, including a local ordinance, showing it was undisputed
that the two hour period between the end of the precipitation event
and the plaintiff's fall was not a reasonable time for them to have
remedied any dangerous conditions, and the plaintiff failed to demon-
strate the existence of a genuine issue of fact as to whether the allegedly
negligent actions of the defendants with respect to snow or ice removal
caused his fall, as his evidentiary submissions were based on mere
speculation or conjecture.

Argued October 6, 2022—officially released February 21, 2023

*Procedural History*

Action to recover damages for personal injuries sus-
tained as a result of the defendants' alleged negligence,
and for other relief, brought to the Superior Court in
the judicial district of Hartford, where the court, *Noble*,
*J.*, granted the defendants' motion for summary judg-
ment and rendered judgment thereon, from which the
plaintiff appealed to this court. *Affirmed.*

*Christopher G. Brown*, for the appellant (plaintiff).

*Kathleen F. Adams*, with whom, on the brief, was
*Michael T. Lynch*, for the appellees (defendants).

*Opinion*

SEELEY, J. The plaintiff, Byron Herrera, appeals from the summary judgment rendered by the trial court in favor of the defendants, Meadow Hill, Inc. (Meadow Hill), and Imagineers, LLC, in this premises liability action arising out of the plaintiff's alleged slip and fall on ice on property possessed and controlled by the defendants. On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendants because the documents submitted in support of the defendants' motion for summary judgment did not eliminate all questions of material fact about (1) whether they had a reasonable time to remediate the snowy or icy condition prior to the plaintiff's fall, or (2) whether, if they did have a reasonable time to remediate that condition before the plaintiff's fall, they failed to do so or did so negligently. We affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are necessary for the resolution of this appeal. In his complaint, the plaintiff alleged that, on February 8, 2018, at approximately 12:30 a.m., he was returning home to his condominium unit located at 76 Hollister Way South in Glastonbury (premises) when he slipped and fell due to the icy condition of the exterior steps and walkway on the premises. The plaintiff alleged that the defendants possessed and controlled the premises. The plaintiff further alleged that, as a result of his fall, he suffered various physical injuries and incurred, and may continue to incur, medical expenses, a loss of wages and earning capacity, and loss of the ability to participate in life's usual activities. The defendants filed an answer and asserted, as a special defense, that the plaintiff's alleged injuries were caused by his own negligence.

On December 18, 2020, the defendants filed a motion for summary judgment, accompanied by a supporting memorandum of law, arguing that there was an ongoing storm at the time of the subject incident or that a reasonable time had not elapsed following the completion of the storm for them to have remediated the snowy or icy condition. The defendants argued, therefore, that they were not liable to the plaintiff as a matter of law pursuant to the ongoing storm doctrine set forth in *Kraus* v. *Newton*, 211 Conn. 191, 197–98, 558 A.2d 240 (1989), which provides that a property owner "may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps."[1] In support of their motion for summary judgment, the defendants submitted excerpts from the plaintiff's deposition testimony, a copy of article IV, § 17-52, of the Glastonbury Code of Ordinances, which provides a twenty-four hour grace period for the removal of snow, sleet and ice after the cessation of precipitation,[2] and the affidavit of meteorologist Robert

Cox, who opined about the weather conditions in Glastonbury on February 7, 2018, and February 8, 2018. Cox averred that there was snow and freezing rain during this time, that the last snow ended at 10:11 p.m. on February 7, 2018, and that many surfaces would have been icy at 12:30 a.m. on February 8, 2018, due to the precipitation that ended approximately two to two and one-half hours earlier.[3]

On August 11, 2021, the plaintiff filed an objection to the defendants' motion for summary judgment. In his objection, the plaintiff argued that an exception to the ongoing storm doctrine applied because the defendants undertook snow removal and salt application during the storm. The plaintiff contended that, because the defendants undertook these remediation efforts while the storm was ongoing, genuine issues of material fact existed regarding the nature and extent of the remediation process and whether it was done in a nonnegligent manner. As evidentiary support for his argument, the plaintiff appended to his objection the deposition transcript of Darien Covert, the superintendent of Meadow Hill,[4] and Michael Curtis, the assistant superintendent of Meadow Hill, regarding their remediation efforts during the storm in question. The defendants thereafter filed a reply to the plaintiff's objection, and the plaintiff filed a supplemental objection to the defendants' motion.

On August 20, 2021, the trial court granted the defendants' motion for summary judgment. In its memorandum of decision, the court concluded that liability may be imposed for snow or ice remediation that occurs during a storm if it is done in a negligent manner. The court noted that the plaintiff had offered no evidence to rebut the defendants' proffer of § 17-52 of the Glastonbury Code of Ordinances as evidence of the standard of care. The court further concluded that the plaintiff had failed to establish that the defendants' snow remediation efforts were in any way negligent. Accordingly, "[b]ecause the defendants . . . offered unrebutted evidence of the standard of care and because of the plaintiff's inability to demonstrate that the negligence of the defendants' employees resulted in his injuries," the court granted the defendants' motion for summary judgment. The plaintiff then filed the present appeal.

I

On appeal, the plaintiff argues that the evidence submitted by the defendants in support of their motion for summary judgment did not eliminate all questions of material fact as to whether the defendants had had a reasonable time to remediate the ice on the walkway before the plaintiff fell. He contends that what constitutes a reasonable time is a question of fact dependent on the circumstances, that the Glastonbury ordinance attached to the defendants' motion for summary judgment was not evidence of a reasonable time to remediate the icy condition, and that the defendants' proof

did not establish the time at which the storm ended.[5] The plaintiff did not make these arguments either in his objection or his supplemental objection to the motion for summary judgment or at the hearing on the motion for summary judgment. In fact, at the hearing on the motion for summary judgment, counsel for the plaintiff specifically stated that the reasonable time window "isn't the appropriate question" and that "the question is if you're going to do [it], you should do it appropriately." He conceded that two hours was a "short window" and that the court "would not want to set a precedent that that window was enough time."[6]

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties. . . . These requirements are not simply formalities. They serve to alert the court to potential error while there is still time for the court to act." (Emphasis in original; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 229–30, 131 A.3d 771 (2016).

Having thoroughly reviewed the pleadings, the filings the plaintiff made in opposition to the defendants' motion for summary judgment, and other submissions before the court, as well as the transcript of the oral argument on the motion for summary judgment, we conclude that the plaintiff failed to argue distinctly that issues of material fact remained regarding whether the defendants had a reasonable time between the end of the precipitation and the plaintiff's fall to have remediated the icy condition. Because the issues raised by the plaintiff on appeal were not expressly raised before the trial court, we decline to consider these issues on appeal.[7]

II

The plaintiff next argues that his rebuttal proof showed that the defendants had a reasonable time to remediate the icy condition but either did not do so or did so negligently. He contends that, "[v]iewing the evidence most favorably to [the plaintiff], a reasonable person could conclude that the defendants, despite being present with ample time and personnel, either did not salt as they claim that they did or did not salt adequately. That creates a genuine issue of material

fact about whether the defendants were negligent in their postprecipitation remediation effort."

In considering this claim, we note that there is a split of authority in the Superior Court as to whether there is an exception to *Kraus* v. *Newton*, supra, 211 Conn. 197–98, that would permit liability to be imposed for snow or ice remediation that occurs during a storm if it is done negligently. Compare *Zyskowska* v. *Danbury Mall, LLC*, Superior Court, judicial district of Danbury, Docket No. CV-18-6029256-S (March 9, 2020) (recognizing exception "upon the principle of Connecticut law that a party who undertakes an act gratuitously is liable for performing it negligently"), with *Rodriguez* v. *Midstate Medical Center*, Docket No. CV-07-5002619, 2008 WL 2745173, *3 (Conn. Super. June 17, 2008) (declining to recognize exception and concluding that "[t]o suggest that one should not begin to plow because they may then become liable for an icy condition during the snowstorm is contrary to the holding of *Kraus*, which did not find a duty to clear snow or to spread sand or ashes while a storm continues" (emphasis omitted; internal quotation marks omitted)). In the present case, the court recognized the exception but concluded that the plaintiff had failed to demonstrate that the defendants' remediation efforts were in any way negligent. We need not decide whether the court correctly recognized this exception to the ongoing storm doctrine because, even if the court correctly recognized the exception, the plaintiff did not present evidence demonstrating the existence of a disputed issue of material fact in opposition to the defendants' motion for summary judgment.

We first set forth the relevant standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact

and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Belevich* v. *Renaissance I, LLC*, 207 Conn. App. 119, 124, 261 A.3d 1 (2021).

In *Belevich*, this court considered the application of the ongoing storm doctrine in the context of summary judgment and its attendant burden shifting. Id., 125. Noting the scant authority from other jurisdictions on the issue of the ongoing storm doctrine in the context of summary judgment, this court adopted, as a matter of Connecticut common law, the approach taken by the New York Appellate Division in *Meyers* v. *Big Six Towers, Inc.*, 85 App. Div. 3d 877, 877–78, 925 N.Y.S.2d 607 (2011), which held that, "[a]s the proponent of the motion for summary judgment, the defendant ha[s] to establish, prima facie, that it neither created the snow and ice condition nor had actual or constructive notice of the condition . . . . [T]he defendant [may sustain] this burden by presenting evidence that there was a storm in progress when the plaintiff fell . . . . [Upon the defendant meeting its burden], the burden shift[s] to the plaintiff to raise a triable issue of fact as to whether the precipitation from the storm in progress was not the cause of his accident . . . . To do so, the plaintiff [is] required to raise a triable issue of fact as to whether the accident was caused by a slippery condition at the location where the plaintiff fell that existed prior to the storm, as opposed to precipitation from the storm in progress, and that the defendant had actual or constructive notice of the preexisting condition . . . . " (Internal quotation marks omitted.) *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 127–28.

In the present case, the trial court, relying on Cox's affidavit and § 17-52 of the Glastonbury Code of Ordinances, concluded that the defendants had satisfied their initial burden to demonstrate that there was no genuine issue of material fact that there was an ongoing storm or that a reasonable time had not elapsed following the conclusion of the storm within which the defendants should have remediated the snowy or icy condition.[8] The court stated that "the defendants proffer § 17-52 as evidence of the standard of care. Specifically, this is evidence that the two hour period between the end of the precipitation event and the fall is not [a reasonable] period of time for them to have remedied any dangerous conditions. The plaintiff offers no evidence to dispute this and as such the defendants would be entitled to summary judgment if the plaintiff's counterargument regarding the inadequacy of snow remediation fails."

In accordance with *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 127, the burden then shifted to the plaintiff "to raise a triable issue of fact as to whether

the precipitation from the storm in progress was not the cause of his accident." To do so, "the plaintiff was required to demonstrate the existence of a triable issue of fact as to whether the snow abatement efforts engaged in by [the defendants] exacerbated the natural hazard created by the snowstorm." *Ali* v. *Pleasantville*, 95 App. Div. 3d 796, 797, 943 N.Y.S.2d 582 (2012).[9] Accordingly, we must determine whether the plaintiff provided any evidence that the allegedly negligent actions of the defendants with respect to the snow or ice removal caused the plaintiff's fall.

The trial court determined that the plaintiff had not satisfied this burden, concluding that he "offered no evidence as to the time the salt had been applied or whether the efficacy of the salt application was deteriorated by continued precipitation. The plaintiff fails also to demonstrate any evidence that the result of the application of salt rendered the condition more defective or dangerous than if they had not applied salt. In short, the plaintiff has failed to establish that the defendants' efforts at snow remediation were in any way negligent." On the basis of our plenary review of the pleadings and documentary submissions, we agree with the trial court that the plaintiff failed to raise a triable issue of fact as to whether the precipitation from the storm was not the cause of the accident.

As stated earlier in this opinion, the plaintiff submitted the deposition testimony of Covert and Curtis in support of his objection to the defendants' motion. According to Covert, the condominium complex is comprised of thirty-three acres and is divided into three sections, a gray section, a red section, and a brown section. The plaintiff's fall occurred in the gray section. Covert and Curtis both testified that they shoveled and applied salt at the complex on February 7, 2018, until approximately 11 p.m. or 11:30 p.m. and returned at approximately 4 a.m. on February 8, 2018, to complete the job.[10] Covert testified that they did not document when they put salt down during this storm; rather, they did a walk-through when they were done to make sure that they did not miss any locations. Although Covert testified that rock salt is used for heavy storms, he could not recall what type of salt he used for this storm. Looking at a photograph showing the walkway where the plaintiff fell, Covert identified the area where he and Curtis had put salt down. Covert testified that he trained Curtis to put down salt "like [he] didn't pay for it" and that they "take a lot of pride in making sure [their] complex is safe." With regard to the gray area of the complex, Covert testified that they "put down a majority of salt on [the] walkways."[11] He could not recall how many times he and Curtis applied salt to this area of the complex.

Curtis recalled that he and his crew of part-time employees shoveled the pathways and stoops on Febru-

ary 7, 2018. He recalled that, at some point, the snow changed over to freezing rain and that they applied salt before leaving the premises.[12] He recalled putting salt down two times during the storm. He testified that he came back in the morning after only "a couple of hours of sleep" to complete the job.

Although Covert and Curtis both testified regarding their remediation efforts during the storm in question, the plaintiff testified in his deposition that snow removal and salt application had not been performed on the steps where he fell.[13] The plaintiff attached, as exhibits to his supplemental objection to the defendants' motion for summary judgment, photographs that he had taken after his fall; the plaintiff contended that these photographs, which were marked as exhibits at the plaintiff's deposition, arguably showed that salt had not been applied to the walkways of the complex. At the hearing on the motion for summary judgment, counsel for the plaintiff argued that "[the plaintiff] says it wasn't done. [The defendants] said it was done, and that's the issue we believe that [we] should bring . . . to a jury." In its decision, the court stated that, "[i]n essence, the plaintiff's argument is that his lack of observation of any conditions indicating plowing, shoveling of snow or application of salt or other treatment ipso facto raises an issue of material fact as to whether such efforts were negligently performed."

As noted by the trial court, the evidence is unclear as to when and if Covert and Curtis applied salt to the precise steps on which the plaintiff fell. Even if the plaintiff is correct that the defendants did not salt the precise steps where he fell, he has failed to raise a triable issue of fact as to whether the defendants created or exacerbated the allegedly dangerous condition by engaging in remediation efforts during the storm. "The mere failure of a defendant to remove all of the snow and ice, without more, does not establish that the defendant increased the risk of harm." (Internal quotation marks omitted.) *Henenlotter* v. *Union Free School District No. 23*, 210 App. Div. 3d 657, 658, 177 N.Y.S.3d 156 (2022); see also *Glover* v. *Botsford*, 109 App. Div. 3d 1182, 1184, 971 N.Y.S.2d 771 (2013) ("the mere failure to remove all snow and ice from a sidewalk . . . does not constitute negligence and does not constitute creation of a hazard" (emphasis omitted; internal quotation marks omitted)); *Ali* v. *Pleasantville*, supra, 95 App. Div. 3d 797 ("[the defendant's] alleged failure to remove snow that had fallen during the course of the storm and its alleged failure to apply salt or sand to the sidewalk, do not constitute affirmative acts of negligence").

Furthermore, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must

substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Martinez* v. *Premier Maintenance, Inc.*, 185 Conn. App. 425, 456, 197 A.3d 919 (2018). The plaintiff in the present case points to his testimony and the photographs marked as exhibits at his deposition to support his claim that the defendants did not salt adequately; according to the plaintiff, this creates a genuine issue of material fact about whether the defendants were negligent in their postprecipitation remediation efforts. We disagree and conclude that the plaintiff's claims are based on mere speculation or conjecture and, therefore, that the plaintiff has failed to substantiate his adverse claim in his objection to the defendants' motion for summary judgment. See *Aronov* v. *St. Vincent's Housing Development Fund Co.*, 145 App. Div. 3d 648, 650, 43 N.Y.S.3d 99 (2016) (summary judgment for defendants properly granted when "[t]he plaintiff offered nothing more than conjecture and speculation as to how the defendants' efforts to remove snow from the sidewalk created or exacerbated the icy condition upon which she allegedly slipped and fell"); *Scher* v. *Kiryas Joel Housing Development Fund Co.*, 17 App. Div. 3d 660, 661, 794 N.Y.S.2d 112 (2005) ("the plaintiff merely speculated that the defendants created the icy condition by negligently shoveling the walkway [and] [s]uch speculation was insufficient to raise a triable issue of fact to defeat the motions [for summary judgment]").

In light of the foregoing, and on the basis of our plenary review of the pleadings and documentary submissions, we conclude that the trial court properly concluded that the plaintiff had failed to raise a triable issue of fact in opposition to the defendants' motion for summary judgment and, therefore, properly granted the defendants' motion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In *Kraus* v. *Newton,* supra, 211 Conn. 191, our Supreme Court held that, "in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical. Our decision, however, does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge." (Footnote omitted.) Id., 197–98.

[2] The Glastonbury Code of Ordinances provides in relevant part:

"Sec 17-52—Removal of snow, ice, debris, vegetative growth and other obstructions.

"(a) The owner, agent of the owner, or occupant of any property bordering upon any street, square or public place within the town where there is a paved or concrete sidewalk shall cause to be removed therefrom any and all snow, sleet, ice, debris, vegetative growth and other obstructions. Nothing

in this section shall be deemed to remove or alleviate the owner's responsibility and liability for correcting hazardous conditions on their property.

"(1) *Removal of snow, sleet and ice shall be done within twenty-four (24) hours after the same shall have fallen*, been deposited or found, or in the case of ice that cannot be removed, such ice shall be covered with sand or some other suitable substance to cause such sidewalk to be made safe and convenient within such time period. Removal of snow and ice shall mean the removal of snow and ice to the full width of the sidewalk." (Emphasis added.)

The defendants also submitted the ordinances of the neighboring towns of Rocky Hill, East Hartford and Manchester.

[3] Cox's affidavit provides in relevant part:

"6. On February 7, 2018, between 9:44 a.m. and 1:10 p.m., snow fell in Glastonbury, Connecticut. The snow accumulated 0.5"–1.0."

"7. On February 7, 2018, between 1:10 p.m. and 9:52 p.m., freezing rain fell in Glastonbury, Connecticut.

"8. On February 7, 2018, between 9:52 p.m. and 10:11 p.m., snow fell in Glastonbury, Connecticut.

"9. On February 8, 2018, at 12:30 a.m., many surfaces would have been icy due to the precipitation that ended about 2.0–2.5 hours earlier."

[4] Meadow Hill is the association for the condominium complex in which the premises is located.

[5] In support of this argument, the plaintiff points out that, although Cox averred in his affidavit that the precipitation ended in Glastonbury at 10:11 p.m. on February 7, 2018, the plaintiff testified in his deposition that the precipitation ended in Middletown at approximately 7 p.m. or 8 p.m. that night.

[6] The transcript of the hearing on the defendants' motion for summary judgment reveals the following:

"The Court: [Counsel], do you concede that there was a reasonable time between the stop of the precipitation and the following—that the two hour period wasn't—was—it would be unreasonable to expect the defendants to have cleared the ice and snow and were salted?

"[The Plaintiff's Counsel]: Your Honor, the—*I have to concede that that is a short amount of time, and the court would—would not want to set a precedent that that window was enough time. So, I can't—that's not my argument.*

"To answer your question, *it's a short window. My argument is different.* My argument relies on the cases that it doesn't—*I'm not talking about the window*—first I have to commit to Your Honor and the court that *the window isn't the appropriate question, the question is if you're going to do [it], you should do it appropriately.* And what—what's here, when you ask the maintenance men how much salt did you apply, how much shoveling did you do, where did you do it, what areas did you do it, they don't document it. There is no way—they testified to that, but there is no documentation as to during this eleven hours, this is what we did on hour one, two, three and four. My client says it wasn't done. They said it was done, and that's the issue we believe that [we] should bring . . . to a jury." (Emphasis added.)

[7] The plaintiff also argues that, even if the claims raised on appeal are not sufficiently the same as the claims raised before the trial court, review pursuant to the plain error doctrine is appropriate. We disagree.

"[The plain error] doctrine . . . is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . It is a rule of reversibility . . . that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernible on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Citation omitted; internal quotation marks omitted.) *O'Rourke* v. *Dept. of Labor*, 210 Conn. App. 836, 855 n.15, 271 A.3d 700 (2022). "[T]he plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Wright* v. *Dzurenda*, 207 Conn. App. 228, 240, 271 A.3d 664 (2021). After a thorough review of the record, we conclude that the plaintiff has failed to demonstrate that there was an error "so clear, obvious and indisputable

as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) Id., 241.

[8] As it was undisputed in *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 128, that there was an ongoing storm at the time of the plaintiff's alleged fall, it was unnecessary for this court to consider in that case whether a reasonable time had elapsed following the conclusion of the storm within which the defendant could have remediated the ice and snow.

[9] As we did in *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 126–27, we turn to the body of law from New York for guidance on this issue.

[10] Covert testified as follows:

"Q. Okay. And do you recall what your plan was with regard to this particular storm and applying salt on the walkways?

"A. I do.

"Q. What was that?

"A. After we had removed the snow, I believe it transitioned to freezing rain, and it—I believe—I'm trying to go by my memory—that it did turn back to snow again, and I believe we went out and salted before we left during—when the storm was still coming down.

"We had to get some rest. I believe we left somewheres around 11 o'clock with a return to work time of 4 a.m. So, off the property—we were off the property from a little after 11, back on property 4 a.m.

"Q. That's 11 p.m.?

"A. Correct.

"Q. Okay. And is it your memory that—I think you said that during the storm, or during the transition, salt was applied?

"A. Correct."

[11] Covert testified as follows:

"Q. And in terms of what you did to the gray area of the complex before 11 p.m., are you able to tell me what you did in terms of fighting the storm?

"A. We took care of all of the snow on the walkways. As I previously stated, if you leave the snow and freezing rain comes onto it, it turns into a block of ice. To make our jobs easier we make sure we get rid of the snow before the transition or during the transition. I do remember that night being very cold and us being very wet doing it. We put down a majority of salt on all these walkways."

[12] Curtis testified as follows:

"Q. And do you recall what you did to deal with the storm on Friday, February 7, 2018?

"A. I recall coming in. There was a minimal amount of snow, one or two inches. Me and my crew all shoveled, pathways and stoops. It stopped for a period of time, changed over to freezing rain. We went out again after a nice break and got some food. Went through it again, dropped the shovels. Then at the end, we went through and salted. Finished around 11, 11:30.

"Q. When you say with 'your crew,' you're talking about the part-time help?

"A. Yes. Shovelers only."

[13] Specifically, when asked what he did when he got out of his car just before he fell, the plaintiff testified: "I did [try] to walk slowly because I knew they didn't do anything, they didn't plow, they didn't shovel or put anything on it so I just walked nice and easy tippy-toed just to be careful of what I was walking on. Once I got to the stairs the stairs were icy so I grabbed to the railing and I went up slowly, but as soon as I got to the last step, the last spot to grab and I had nothing else to grab and  . . .  that's when I slipped."